607 A.2d 1289

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. RONALD WILSON, DEFENDANT–APPELLANT.

Argued December 3, 1991—Decided June 22, 1992.

*Mark H. Friedman,* Assistant Deputy Public Defender, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney).

*Edward J. Quigley,* Assistant Prosecutor, argued the cause for respondent (*John Kaye,* Monmouth County Prosecutor, attorney; *Mark P. Stalford,* Assistant Prosecutor, of counsel and on the brief).

PER CURIAM.

A jury convicted defendant of knowing and purposeful murder, possession of a handgun without a permit, and possession of a weapon for an unlawful purpose. The court sentenced defendant as follows: on the murder count, to life imprisonment with a thirty-year period of parole ineligibility; on the possession-without-a-permit count, to a consecutive term of five years, two-and-one-half years without parole eligibility; and on the possession-for-an-unlawful-purpose conviction, to ten years, five years without parole eligibility, consecutive to the other sentences. In an unreported decision a divided panel of the Appellate Division affirmed. We reverse in part and affirm in part.

I

On September 24, 1987, defendant, Ronald Wilson, killed Gary Meredith by shooting him twice—once in the head and once in the left flank. The evidence of the events that culminated in the homicide is in conflict.

The State's principal witness, Timothy Dyson, described those events as follows. On September 24, 1987, defendant told Dyson that he was "going to go over and shoot [the victim]." After some discussion defendant, accompanied by Dyson, took a taxi to the victim's apartment, where the three men drank beer and listened to music until defendant and Meredith went into the bedroom. By the time Dyson joined the other two in

the bedroom, Wilson had taken off his shirt and boots. When defendant left the room, the victim "grabbed [Dyson's] groin." After Wilson returned, he took out his pistol, ordered Meredith to lie on the bed with a pillow over his head, and threatened to shoot. The victim begged defendant not to shoot. Because he did not want to get involved, Dyson fled down a flight of stairs to the street, after which he heard "one shot and a lot of mumbling."

According to Wilson the events unfolded differently. On the night of the shooting he went to Meredith's apartment to retrieve a ring that he had left there. Because he had been raped during an earlier visit to the apartment, defendant armed himself with a gun and took Dyson along for protection. After drinking beer and listening to some music, defendant asked to use Meredith's bathroom. Instead of going to the bathroom, however, defendant went into the victim's bedroom to look for the ring. Meredith followed. While the victim and defendant were alone in the victim's bedroom, the victim grabbed Wilson by the neck and testicles, and wrestled him to the bed. Defendant then "grabbed the gun and just put it over and * * * shot him." Defendant got off of the bed as Dyson entered the room. Dyson then told Wilson that he was leaving. As Meredith lunged at defendant, defendant fired a second shot, again hitting the victim.

In addition to the foregoing the record contains evidence that within hours after killing Meredith, defendant pointed a gun at one Kevin Morye and threatened to shoot him in the head.

The Appellate Division's affirmance of the convictions produced a dissent by Judge Brochin, who found reversible error in the trial court's jury charge on murder. In addition, the dissenter below would have merged defendant's conviction for possession of a weapon for an unlawful purpose with his conviction for murder.

Defendant appealed to this Court as of right on the basis of the dissent below, see *Rule* 2:2–1(a)(2), and petitioned for certi-

fication, which we granted, 126 *N.J.* 324, 598 *A.2d* 883 (1991), on the issue of the prosecutor's comments during summation.

Thus, three questions are before us: (1) whether the trial court's jury instructions concerning the law of murder were erroneous; (2) whether the prosecutor's statements during summation were improper; and (3) whether defendant's conviction for possession of a weapon with an unlawful purpose merges with his conviction for murder. Because we conclude that the jury instructions on murder were legally deficient, we reverse defendant's conviction for murder. Although some of the prosecutor's remarks were inappropriate, we find that they were not clearly capable of producing an unjust result. *See R.* 2:10–2. Thus we affirm defendant's remaining convictions. Because we reverse defendant's murder conviction, we need not reach the merger question.

## II

### —A—

We first consider defendant's contention that the jury instructions were flawed in that they failed adequately to communicate that the State has the burden of proving that the defendant did not act in the heat of passion.

■ An unjustified purposeful killing is either murder or passion/provocation manslaughter: a homicide that would otherwise be murder save for the fact that it was committed in the heat of passion resulting from reasonable provocation. *State v. Coyle,* 119 *N.J.* 194, 221, 574 *A.2d* 951 (1990). When the record contains evidence of passion/provocation, the jury can convict a defendant of murder only if the State proves beyond a reasonable doubt that the purposeful killing was not the product of passion/provocation. *E.g., State v. Erazo,* 126 *N.J.* 112, 121, 594 *A.2d* 232 (1991); *State v. Coyle, supra,* 119 *N.J.* at 221–22, 574 *A.2d* 951; *State v. Grunow,* 102 *N.J.* 133, 145, 506 *A.2d* 708 (1986); *State v. Powell,* 84 *N.J.* 305, 315, 419 *A.2d* 406 (1980).

"A failure to charge accordingly violates defendant's Sixth and Fourteenth Amendment rights." *Powell, supra,* 84 *N.J.* at 315 n. 10, 419 *A.*2d 406.

■ Here, although the trial court recognized that the record contained evidence of passion/provocation, its charge to the jury did not meet *Powell*'s requirement of an instruction on the State's burden: to demonstrate that defendant had not acted in the heat of passion. The trial court charged as follows:

> If you are satisfied beyond a reasonable doubt that the defendant purposely or knowingly caused the death of the victim without acting in the heat of passion * * * then you must return a verdict of guilty of murder * * *.
>
> \* \* \* \* \* \* \* \*
>
> If you find beyond a reasonable doubt that the killing was done in the sudden state of rage or in the heat of anger and under circumstances furnishing legal provocation, then the crime is voluntary [passion/provocation] manslaughter.

Whatever other substantive deficiencies may inhere in the foregoing, they omit a specific instruction that the State has the burden of proving beyond a reasonable doubt that defendant did not act in the heat of passion. In that respect the jury charge is indistinguishable from the instructions that we found inadequate.in *Erazo, supra,* 126 *N.J.* 112, 594 *A.*2d 232, and in *Grunow, supra,* 102 *N.J.* 133, 506 *A.*2d 708.

■ The Appellate Division recognized that the trial court had "failed to specifically instruct as mandated by *Grunow.*" Nevertheless, because the jury charge contained the customary—indeed,. indispensable—instruction that the State bears the burden of proving all of the elements of the offenses charged, the Appellate Division sustained defendant's convictions. The trial court gave the following general instructions:

> Now, because this is a criminal case, the State has the burden of proving the guilt of the defendant beyond a reasonable doubt. And unless the State has proven the guilt of the defendant for offenses charged, together with proof of each of the elements that make up the offense, if they haven't proved those things beyond a reasonable doubt, then you must find the defendant not guilty.

In light of that portion of the jury charge, the Appellate Division held that any error was not clearly capable of producing an unjust result. *See R.* 2:10–2. Before this Court the

State urges that we adopt the reasoning of the Appellate Division and find that the general instructions quoted above unambiguously convey to the jury that the State must disprove passion/provocation.

In *Erazo, supra,* 126 *N.J.* 112, 594 *A.*2d 232, we considered a similar argument. There the defendant, convicted of capital murder, argued that the jury charge had erroneously imposed on him the burden of proving passion/provocation. The trial court had instructed, "So if you're satisfied beyond a reasonable doubt that the defendant caused the decedent's death under circumstances that would otherwise be murder but was committed in the heat of passion, then you may return a verdict of guilty of manslaughter." *Id.* at 122, 594 *A.*2d 232. The State conceded that that portion of the jury charge—much like the one in this case—was erroneous, but argued that an earlier, general instruction concerning the State's burden of proof rendered the charge on passion/provocation adequate. Rejecting the State's contention, we stated that although the earlier, general instruction concerning the burden of proof was accurate, it "lack[ed] the muscle to shift to the State the burden to disprove passion/provocation." *Id.* at 122, 594 *A.*2d 232. Accordingly, we reversed the defendant's conviction.

We adhere to our conclusion in *Erazo.* The general instructions given by the trial court do not satisfy the requirement articulated in *Powell, supra,* namely, that "the trial judge must make the State's burden clear by instructing the jury that * * * it must be convinced beyond a reasonable doubt that the accused did not kill * * * in the heat of passion." 84 *N.J.* at 315, 419 *A.*2d 406. When the record contains evidence of passion/provocation, a charge that does not include a specific instruction that the State must disprove passion/provocation before the jury can find defendant guilty of murder is fatally flawed—even when the instructions contain general statements concerning the State's burden of proof. *Erazo, supra,* 126 *N.J.* at 122, 594 *A.*2d 232.

In *State v. Weeks*, 107 *N.J.* 396, 410, 526 *A.*2d 1077 (1987), we noted the reluctance of reviewing courts to reverse on the grounds of plain error when, as here, the defendant has failed to object to a charge. Nevertheless, we emphasized that "incorrect instructions of law are poor candidates for rehabilitation under the harmless error theory," and reversed the defendant's conviction. *See also State v. Vick*, 117 *N.J.* 288, 289, 566 *A.*2d 531 (1989) (noting "erroneous instructions are almost invariably regarded as prejudicial"). Here, in spite of defendant's failure to object, the erroneous jury instructions require reversal of defendant's murder conviction.

—B—

Defendant's second challenge is to the prosecutor's comments during summation. He asserts that the prosecutor impermissibly vouched for the State's principal witness and that the prosecutor asked the jury to draw an impermissible inference concerning defendant's failure to have produced two witnesses. Although we agree that the prosecutor's remarks were improper, we are convinced that the improprieties, at least as they related to defendant's remaining convictions, were not clearly capable of producing an unjust result. *See R.* 2:10–2. We consider each impropriety in turn.

1

Defendant contends that the prosecutor impermissibly vouched for the State's principal witness by stating:

Timmy Dyson, yeah, Timmy Dyson thinks that his testimony is going to be looked upon favorably. I made him no promises and let me tell you something, another jury will determine his guilt in connection with this case. If you think for one second that I'm going to dismiss any charges against Timmy Dyson, you're wrong.

I'm not making any deals at all. I'll be on him like a fly on sugar when it comes to his trial because he was part of this.

In the foregoing passage the prosecutor made two points. First, he stated that he had not made a deal with Dyson, that is, he had not offered leniency in exchange for Dyson's testimony.

Under the circumstances presented here, that remark is unobjectionable. During summation defense counsel had stated, in effect, that Dyson's testimony was incredible, designed to extract favorable treatment from the State. The prosecutor's response did not exceed legitimate comment in its emphasis on Dyson's trial testimony that no deal had been made.

More troubling is the second point, which focuses on the prosecutor's statement that he would never make a deal with Dyson because Dyson "was part of" the murder. No one had testified under oath, subject to cross-examination, in support of that assertion. The prosecutor's statement, then, was not based on the record. Accordingly, the remark was improper, *State v. Marshall,* 123 *N.J.* 1, 156, 586 *A.*2d 85 (1991); *ABA Standards for Criminal Justice* § 3–5.8(a) (2d ed. 1980) ("It is unprofessional conduct for the prosecutor intentionally to * * * mislead the jury as to the inferences it may draw."), as acknowledged by the State at oral argument before us. That impropriety is underscored by the fact that the comment proved untrue: one month after defendant's trial Dyson pleaded guilty to conspiracy in exchange for the prosecutor's recommendation to dismiss the murder charge against him.

However, in light of defendant's failure to object, and given Dyson's testimony, the impropriety does not rise to the level of reversible error. From the "fact" that Dyson would not receive leniency in exchange for his testimony, the objectionable inference that the jury might have drawn was that Dyson had no self-serving reason to testify in favor of the State. In short, the prosecutor implied that Dyson's testimony had not been tainted by any reasonable hope of obtaining favorable treatment.

But the question of Dyson's expectations was not genuinely disputed. On cross-examination, Dyson conceded that he hoped the State would "look favorably" on the charges pending against him because of his testimony, and that by testifying he

was "trying to help [himself]." During summation counsel for defendant recounted that testimony, as did the prosecution.

For purposes of determining whether defendant was guilty, what mattered was not whether the prosecutor would later make a deal with defendant. What mattered was whether Dyson had testified in the hope of receiving favorable treatment. He had, and that fact was unmistakably clear to the jury. Dyson's "credibility was obviously contested to an extent sufficient to minimize the impact of the prosecutor's infraction." *Marshall, supra,* 123 *N.J.* at 157, 586 *A.*2d 85.

2

■ We next consider whether the prosecutor improperly commented on defendant's failure to produce two witnesses, Sue Kosta and Brian Stevens. To evaluate that claim we must elaborate on defendant's testimony concerning his reason for visiting the victim's apartment with a gun on the day of the shooting. Defendant explained his purpose by recounting two earlier visits. On the first visit defendant went to Meredith's apartment to receive guitar lessons. When the victim made sexual advances, defendant fled, leaving behind his guitar and a ring given him by his ex-girlfriend, Sue Kosta.

To retrieve the ring and the guitar defendant again visited the victim's apartment, this time accompanied by Brian Stevens. Defendant successfully retrieved the guitar and put it into his car. When defendant returned to the apartment to get the ring, Stevens was still sitting in the living room. Defendant asked for the ring, but Meredith kept "stalling." Noticing something that resembled the ring in the victim's bedroom, defendant entered the room. Meredith followed, and then raped defendant. When defendant ran out of the apartment— without the ring—Stevens was no longer in the apartment. On the day of the fatal shooting defendant went to the victim's apartment a third time, again trying to recover the ring.

Neither Brian Stevens nor Sue Kosta testified at trial.

Only under certain circumstances may a prosecutor argue that the jury should draw an adverse inference from a defendant's failure to produce a witness. First, the witness must have been "within the power of the party to produce." *State v. Clawans*, 38 *N.J.* 162, 171, 183 *A.*2d 77 (1962). A witness is within the power of the party to produce when that party has superior knowledge of the existence or "identity of a witness or of what testimony might be expected or where a certain relationship, such as employer-employee, exists * * *." *State v. Carter*, 91 *N.J.* 86, 127–28, 449 *A.*2d 1280 (1982). Second, it must appear that the absent witness's testimony, if given, would have been more than merely cumulative, that is, the witness's testimony on a point would have been superior to the testimony actually developed on that point. *Clawans, supra*, 38 *N.J.* at 171, 183 *A.*2d 77.

In addition, the prosecutor must notify the court, out of the presence of the jury, that the State intends to ask the jury to draw an inference based on the defendant's non-production of a witness. Only then, "after all the particulars are disclosed," can the trial court "properly determine whether the inference should be urged in summation." *State v. Irving*, 114 *N.J.* 427, 442, 555 *A.*2d 575 (1989).

Here, without first notifying the court, the prosecutor stated in summation, "Where's Sue. [Defendant] is a liar." And, "Where's Brian. Brian Stevens * * * Brian Stevens is a fiction. He doesn't exist. You can bet that if he did, he'd be in this courtroom in two seconds because [defendant's lawyer] is a good lawyer."

■ Defendant argues that the prosecutor's remarks concerning his failure to have produced two witnesses were improper because the testimony of the two absent witnesses would have been merely cumulative and because the prosecutor failed to notify the trial court of the State's intention to argue the adverse inference. Defendant's contention that the testimony of Sue Kosta and Brian Stevens would have been merely

cumulative is incorrect. The only other evidence concerning his previous visits—and thus his motive for going to Meredith's apartment with a gun—was his own self-serving testimony. Corroboration by other witnesses would have been helpful, noncumulative testimony. Nevertheless, defendant is correct in asserting that the prosecutor improperly failed to notify the court of his intention to argue that the jury should draw an adverse inference from defendant's failure to have produced the two witnesses. *Irving, supra,* 114 *N.J.* at 442, 555 *A.*2d 575.

Defendant objected after the prosecutor's summation. Inasmuch as the objection alerted the court to the impropriety in time to allow correction of any error, we consider the objection to be timely. *See State v. Farrell,* 61 *N.J.* 99, 106, 293 *A.*2d 176 (1972). However, we conclude that the prosecutor's procedural error, at least as it related to defendant's two remaining possession convictions, was not clearly capable of producing an unjust result. *See R.* 2:10–2.

Defendant has not pressed any sound argument indicating that the comments were substantively improper. The source for the prosecutor's knowledge of the witnesses was defendant himself; and in light of defendant's cross-examination, the absence of the witnesses was conspicuous. As we stated in *Irving, supra,* another case involving a prosecutor's procedural error, "defendant exposed the lacuna. The prosecutor merely called greater attention to it." 114 *N.J.* at 444, 555 *A.*2d 575.

## C

Because we reverse defendant's murder conviction, we need not consider his merger claim. Nevertheless, because the issue may arise on remand, comment on it is appropriate. Defendant contends that his convictions for possession of a weapon with an unlawful purpose and for murder must merge because both convictions "arose from the same criminal transaction." We find no merit in that claim. The State produced

evidence showing that defendant had used the weapon not only to murder the victim but to threaten someone else after the homicide. That evidence is sufficient to prevent merger. *See State v. Truglia,* 97 *N.J.* 513, 480 *A.*2d 912 (1984) (refusing to merge convictions for possession of a handgun for an unlawful purpose and for aggravated assault when evidence would permit the conclusion that the convictions were based on separate episodes); *State v. Russo,* 243 *N.J.Super.* 383, 412, 579 *A.*2d 834 (App.Div.1990) (refusing to merge because evidence showed that defendant possessed the gun to use it unlawfully in New York, an unlawful purpose unrelated to the other convictions), *certif. denied,* 126 *N.J.* 322, 598 *A.*2d 882 (1991); *State v. Johnson,* 203 *N.J.Super.* 127, 136, 495 *A.*2d 1367 (App.Div.1985) ("[T]here was evidence that defendant had the gun * * * not for the purpose of shooting the victim but for the purpose of threatening another * * *. * * * The two crimes are therefore separate and distinct."), *certif. denied,* 102 *N.J.* 312, 508 *A.*2d 195 (1986).

### III

The judgment of the Appellate Division is affirmed in part and reversed in part, and the cause remanded for retrial of the murder charge.

CLIFFORD and STEIN, JJ., dissenting in part.

Only from so much of the Court's perspicuous opinion as addresses the merger issue do we part company with our colleagues. We agree with Judge Brochin, dissenting below, who recognized that the State had produced evidence to support the possession charge that was independent of the evidence that supported the murder charge—that is, the State's evidence showed that defendant had used the gun to threaten someone other than the murder victim. Judge Brochin also was persuaded that that evidence was sufficient to prevent merger if the trial court had instructed the jury differently. The narrow

issue that divided the Appellate Division was whether the jury instructions in this case require that defendant's convictions merge.

The dissenter below argued that in light of the jury instructions, the jury had no opportunity to reveal by its verdict whether the jury had based both convictions on the same act, namely, shooting the victim. Accordingly, "the defendant is entitled to have us treat the verdict as a finding that his unlawful purpose for possessing the firearm was to kill Meredith. Consequently, his conviction[s] * * * must merge * * *." Quoting *State v. Williams*, 213 *N.J.Super.* 30, 36–37, 516 *A.*2d 265 (App.Div.1986), *certif. denied*, 107 *N.J.* 104, 526 *A.*2d 177 (1987), Judge Brochin further stated that " 'in order to prevent merger, a judge should ask the jury to determine by separate verdicts whether the possession was solely with the specific unlawful purpose to use the weapon against the victim of the greater offense or with a broader unlawful purpose.' "

The majority below concluded that the convictions do not merge because the jury *might* have based each conviction on a different transaction or on different evidence. In effect, the majority endorsed a presumption in favor of the State: that the jury had based both convictions on separate wrongdoings.

The reported decisions that have considered whether to merge two convictions in the face of an ambiguous jury verdict are in tension. For example, in *State v. Johnson*, 203 *N.J.Super.* 127, 495 *A.*2d 1367 (App.Div.1985), *certif. denied*, 102 *N.J.* 312, 508 *A.*2d 195 (1986), the court considered whether to merge the defendant's convictions for aggravated manslaughter and possession of a weapon with an unlawful purpose. The defendant in that case—as here—claimed that because both offenses had arisen out of the same transaction, the convictions should merge. The Appellate Division disagreed, noting that "there was evidence that defendant had the gun before he encountered the victim, not for the purpose of shooting the victim but for the purpose of threatening another individual * * *." *Id.* at

136, 495 *A*.2d 1367. Because the evidence would support the conclusion that the two crimes were distinct, the convictions did not merge.

The opinion in *Johnson* does not recite the jury instructions. Thus, whether the jury verdict in that case would also have permitted the conclusion that the jury had based both convictions on the same act is unclear. But because the trial court stated that "there was evidence" to show that the defendant had the gun to shoot someone other than the victim, rather than "the jury found," we assume that both conclusions were plausible.

The approach taken in *Johnson* finds support in cases decided by this Court. For example, in *State v. Miller*, 108 *N.J.* 112, 120, 527 *A*.2d 1362 (1987), we stated, "The record does not disclose what specific conduct formed the basis of the jury verdicts, but there was ample evidence to support both convictions based on different proofs." *See also State v. Buonandonna*, 122 *N.J.* 22, 50, 583 *A*.2d 747 (1991) ("[W]e find that the State proffered sufficient evidence for each offense and that the convictions address separate injuries. * * * [T]herefore * * * non-merger was proper."); *State v. Cole*, 120 *N.J.* 321, 334, 576 *A*.2d 864 (1990) ("Here there was sufficient evidence to support the convictions for aggravated sexual assault, on proofs separate and distinct from the proofs necessary for the [other convictions].").

On the other hand, in *Williams, supra*, 213 *N.J.Super.* 30, 516 *A*.2d 265, the case relied on by Judge Brochin, the court considered whether the defendant's convictions for aggravated manslaughter and possession of a firearm for an unlawful purpose should merge. As here, the State's evidence would have supported the conclusion that the defendant had possessed the weapon for a purpose unrelated to that of killing the victim. Nevertheless, the court held that the convictions merged.

When instructing the jury, the trial court in *Williams* had defined the possession crime as "possession of a firearm * * *

to use it unlawfully against the person of [the victim]." *Id.* at 36, 516 *A.*2d 265. The jury thus had "no opportunity to find" that the defendant had possessed the firearm "with an unlawful purpose broader than that of using it against [the victim]." *Id.* at 36–37, 516 *A.*2d 265. Accordingly, the court merged the convictions. The *Williams* court then concluded that to prevent merger, courts should ask juries to determine by separate verdicts whether the possession was solely with the specific unlawful purpose to use the weapon against the victim. *Id.* at 37, 516 *A.*2d 265. Without such a verdict, the *Williams* court implied, a court must merge a defendant's convictions when the jury might have relied on the same transaction for each conviction.

In *State v. Land,* 73 *N.J.* 24, 372 *A.*2d 297 (1977), this Court endorsed an approach much like that in *Williams.* We indicated that convictions should merge when the jury verdict does not reveal whether the jury relied on the same evidence or conduct as the basis for both convictions. In *Land,* one of the defendants was convicted of possession of marijuana and cocaine, and of possession of those substances with intent to distribute. Because that defendant's attorney had a conflict of interest, we reversed the convictions. Nevertheless, because the issue was likely to arise on remand, we considered whether that defendant's convictions for possession and possession with intent to distribute should merge.

In the defendant's home the police had found cocaine in two places. We stated: "[I]n addition to the cocaine found in the metal box, foil packets of small quantities were also located in the dresser drawer so that an inference could be drawn that these were possessed for personal use as distinguished from the bulk cocaine which the jury apparently concluded was to be distributed." *Id.* at 36, 372 *A.*2d 297. Based on that evidence the jury might have found facts sufficient to prevent merger, but that "was not clear from the jury's verdict of guilt." *Ibid.* We concluded that on remand, "the State should specify, with particularity, the substances upon which it seeks a conviction

for possession and for possession with intent to distribute. * * * The trial judge should charge the jury on what specific substances [its] findings of possession and possession with intent to distribute may be predicated." *Ibid.* Thus, we recognized the unfairness of presuming that the jury relied on different facts as the basis for each conviction.

To presume that the jury found that this defendant had engaged in two wrongdoings rather than one is unfair, tantamount to presuming defendant guilty of a second crime. In the absence of a jury verdict indicating whether the same act formed the basis for each conviction, we would indulge the presumption that defendant is guilty of one wrongdoing. *See Williams, supra,* 213 *N.J.Super.* 30, 516 *A.*2d 265. Thus, if defendant is again convicted for the homicide, his possession conviction should merge.

*For affirmance in part; reversal in part; and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

CLIFFORD and STEIN, JJ., dissenting in part.