639 A.2d 1100

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. NEVEL L. HESLOP, DEFENDANT–APPELLANT.

Argued January 5, 1994—Decided May 3, 1994.

*Steven M. Gilson,* Designated Counsel, argued the cause for appellant *(Zulima V. Farber,* Public Defender, attorney).

*Hilary L. Brunell,* Assistant Prosecutor, argued the cause for respondent *(Clifford J. Minor,* Essex County Prosecutor, attorney).

The opinion of the Court was delivered by

HANDLER, J.

The issue in this appeal is whether a jury instruction on passion/provocation manslaughter created sufficient prejudice to warrant the reversal of criminal convictions. The flaws in that instruction related to the sequence in which the court required the jury to consider the charged offenses and to the State's burden of proof with respect to passion/provocation as an element of the homicide. The jury acquitted defendant of felony murder and convicted him of murder, criminal trespass as a lesser-included offense of burglary, and two weapons-possession charges. In an

unreported opinion, the Appellate Division affirmed the conviction for murder.  We granted defendant's petition for certification, —— *N.J.* ——, —— *A.*2d —— (1993), and now affirm.

I

The factual circumstances leading to the homicide are essentially uncontested.  Defendant, a thirty-six-year-old Jamaican who emigrated to the United States in 1984, married the victim, Millicent Heslop, in Jamaica in 1987.  Their union produced one child, who lives in Jamaica with his maternal grandparents.  For the last two years of their marriage defendant and the victim had resided in Brooklyn, New York.  Defendant was gainfully employed as a floor-sander and had no prior criminal record.  In February 1991, the victim left defendant and began residing with her sister, Natalie Gordon, in Irvington, New Jersey.  A brief reconciliation occurred in April 1991, and defendant lived with his wife and sister-in-law in the Irvington apartment for about one week.  When "problems" between defendant and his wife resurfaced, defendant was told to leave the apartment.

On April 26, 1991, Kirby Clark, a co-employee of defendant, drove defendant to the Irvington apartment so defendant could retrieve his tools, woodworking equipment, and clothing.  Defendant left Clark's van but returned a few minutes later to get a crowbar, informing Clark that the locks had been changed.  Defendant then returned to the apartment.  The primary evidence of the events that occurred inside the apartment consisted of defendant's signed statement, which the State offered in evidence in the course of its case.

According to defendant, when he got back to the apartment, he could see his wife through the door, and he told her to let him in so that he could get his clothes and tools.  Defendant stated that "she opened the door and greeted me with a knife."  Defendant pushed her inside the apartment and they both fell to the floor.  As defendant picked up the knife, which was broken, his wife

"grabbed another knife and started stabbing at me. I started blocking it."

According to defendant's statement, his wife "took the knife and started to run and scream outside. Then we started to wrestle outside of the house, she tried to stab me with the knife, and I hit her with the crowbar, then she started running away and she ran to the barber shop."

According to witnesses, defendant dropped the crowbar and pursued the victim. Millicent entered the barber shop holding the knife, and screamed for help. When defendant entered the shop, a struggle ensued, and the victim fell to the floor, the knife dropping from her hand. As defendant picked up the knife, patrons in the shop shouted "Don't do it." Defendant responded, "It's okay, she is my wife," and stabbed Millicent. He removed the knife and walked back to Clark's van, dropping the knife in some bushes. The police arrived soon after and apprehended defendant.

A search of Natalie Gordon's apartment revealed a broken knife in the kitchen and blood stains on the apartment door, the floor, and the bedroom wall. After his arrest, defendant received medical treatment for a cut on his finger that required four stitches.

A grand jury indicted defendant for murder, felony murder, second-degree burglary, unlawful possession of a knife, and possession of a knife for an unlawful purpose. Defendant neither testified at his trial nor offered any other evidence bearing on the events contained in his statement. The trial court charged the jury on murder and on the lesser-included offenses of aggravated manslaughter, reckless manslaughter, and passion/provocation manslaughter. The jury acquitted defendant of felony murder but convicted him of murder, criminal trespass as a lesser-included offense of burglary, and the possessory offenses. The court merged the weapons convictions into the murder conviction and sentenced defendant to thirty years imprisonment with thirty

years of parole ineligibility for the murder conviction and a concurrent term of eighteen months for the criminal trespass.

The Appellate Division rejected defendant's contention that the trial court had failed to instruct the jury that the State had the burden of proving beyond a reasonable doubt that defendant had not committed the homicide in the heat of passion based on reasonable provocation. Further, the court below had "serious doubt as to whether the facts could, even reviewing them in the light most favorable to the defendant, support a jury finding that this killing was 'committed in the heat of passion resulting from a *reasonable* provocation....'" quoting *N.J.S.A.* 2C:11–4b(2)) (emphasis supplied).

## II

Our cases hold that an instruction that gives the jury the impression that it need consider passion/provocation manslaughter only if it fails to find that purposeful and knowing murder occurred is defective. *State v. Coyle,* 119 *N.J.* 194, 574 *A.*2d 951 (1990). Furthermore, we have held that if a court fails to indicate clearly that the burden is on the State to prove beyond a reasonable doubt that a defendant did not act with passion or provocation, such a failure will constitute error. *State v. Erazo,* 126 *N.J.* 112, 594 *A.*2d 232 (1991). If those two errors occur in combination and are left unmitigated by curative instructions, then the conclusion that the errors were seriously prejudicial is difficult to resist. That proposition is especially applicable when the record contains strong evidence of passion/provocation such that had a jury been able fully to understand the significance of that evidence in light of correct instructions, the evidence would likely have persuaded the jury.

We do not minimize the errors that occurred here. But the errors were greatly mitigated, if not totally repaired.

The challenged instruction initially contained the same "sequential" error that we found in *Coyle*. The trial court here

instructed the jury on knowing and purposeful murder, and then, prior to charging the jury on the lesser-included offenses of murder, stated:

If you were to decide the defendant is guilty of a purposely knowing murder, then you don't have to consider the lesser included offenses.

However, defense counsel, prior to deliberations, requested that the court refine the instructions. Accordingly, the court gave the jury the following curative instruction:

The ... point that counsel wants me to make clear to you is that when you consider the charge of purposeful or knowing murder that you have to in that context, of course, aside from considering the self-defense that's been interposed here as well, that you have to consider the heat of passion.

In other words, if you are not satisfied beyond a reasonable doubt that the defendant acted purposely or knowingly, then you would not find him guilty of a purposeful or knowing murder.

If you are satisfied beyond a reasonable doubt that the defendant knowingly caused the death or serious bodily injury resulting in death without acting in a heat of passion, then you should find him guilty of murder.

If you are satisfied beyond a reasonable doubt that the defendant knowingly or purposely caused the death of the victim but you have a reasonable doubt as to whether the defendant did so in the heat of passion upon a reasonable provocation, then you should find the defendant guilty of manslaughter.

*In other words, that you should consider the heat of passion upon reasonable provocation in connection with the purposeful or knowing murder count.* (Emphasis added)

Thus, in submitting the matter to the jury, the trial court did not instruct it to consider and to determine purposeful/knowing murder prior to and separately from its consideration of passion/provocation manslaughter. Rather, it instructed the jury that in its consideration of the nature of the homicide that had been committed, it should take into account the element of passion/provocation together with the element of purpose/knowledge. Taken alone, the earlier sequential charge could have improperly foreclosed the jury's consideration of passion/provocation manslaughter and would have violated the stricture of *Coyle*. The later instruction, however, undid much of the damage caused by the earlier charge. In sum, the trial court emphatically and clearly told the jury that in the context of considering the charge of purposeful or knowing murder, it must "consider the heat of

passion." The court also instructed the jury that if it had "a reasonable doubt as to whether the defendant [had caused the death of the victim] in the heat of passion upon a reasonable provocation," it could not find defendant guilty of knowing and purposeful murder.

In *Coyle* the trial court failed to correct the flawed sequential charge. This Court in *Coyle* noted that "the failure to heed defendant's objection to the charge and to reinstruct the jury so greatly risked confusion as to amount to error." 119 *N.J.* at 224, 574 *A.*2d 951. In contrast, the trial court heeded defendant's objection at trial in the present case. Thus, unlike the situation in *Coyle,* the correction alleviated the risk of confusion and the instruction as a whole could not be understood to foreclose the jury's full and appropriate consideration of passion/provocation manslaughter.

We have often emphasized that instructions to a jury are to be examined as a whole. "[P]ortions of a charge alleged to be erroneous cannot be dealt with in isolation but the charge should be examined as a whole to determine its overall effect." *State v. Wilbely,* 63 *N.J.* 420, 422, 307 *A.*2d 608 (1973). A consideration of the entire jury instruction leads to the inevitable conclusion that the sequential error was largely overcome by the subsequent instruction.

The trial court also did not explicitly charge the jury that the State bore the burden of proving beyond a reasonable doubt the absence of passion/provocation, as required by *Erazo.* The importance of that charge, and the vice that attends its omission, is that a jury might otherwise be led to believe that the defendant has the burden to prove the presence of passion/provocation. However, that possibility appears attenuated in this case.

The court did sufficiently inform the jury that it must find defendant guilty of nothing greater than manslaughter if it had a reasonable doubt concerning whether defendant had acted in the heat of passion:

If you are not satisfied beyond a reasonable doubt that the defendant, that the elements of this offense have been proved, or any one of them has failed to be proved, then you should find the defendant not guilty of this charge.

On the other hand, if you are satisfied beyond a reasonable doubt that the defendant knowingly or purposely caused death or serious bodily injury resulting in death, without—I am sorry—if you are satisfied beyond a reasonable doubt that defendant knowingly or purposely caused the victim's death, but you have a reasonable doubt as to whether defendant did so in the heat of passion upon a reasonable provocation, then you should find the defendant guilty of manslaughter.

That instruction does not totally rectify the trial court's failure to point out specifically that the State bears the burden of proof with respect to a specific aspect of an element of purposeful and knowing murder, namely, the absence of passion and provocation. Nevertheless, although the instruction did not explicitly state that the burden of proving the lack of passion/provocation rests with the State, nowhere did it suggest that the burden of proof on that issue belongs to the defendant.

The dissent of Justice Stein focuses on the trial court's use of the words "did so" in a sentence of the instruction. *Post* at 332–335, 639 *A.*2d at 1107–1109. That sentence conveyed this directive: that "a reasonable doubt as to whether the defendant *did so* [committed the homicide] in the heat of passion upon a reasonable provocation" should result in a finding that the defendant was guilty of nothing greater than manslaughter. A correct instruction, according to the dissent, should have used the words "did not do so" [did *not* commit the homicide] rather than "did so," because the State must prove the *absence* of passion/provocation in connection with the killing.

The dissent's analysis of the trial court's language does not credit the commonsense, ordinary understanding reasonably imparted by the instruction as given. The trial court's use of the term "whether" in conventional parlance is a short-hand expression for "whether or not." *The Compact Edition of the Oxford English Dictionary* 3755 (1971). In the context of the court's charge, the "or not" implicit in the use of "whether" conveys this meaning: "whether the defendant did so or whether the defendant did not do so." Hence, fairly understood, "whether" would encom-

pass the statement that the dissent would prefer. Moreover, contrary to the suggestion found in Justice Clifford's dissent, *post* at 339, 639 *A.*2d at 1111, the alternative formulation implicit in the trial court's instruction goes far to eliminate the risk that the jury understood that any aspect of the burden of proof was on defendant.

Furthermore, when the trial court recharged the jury on passion/provocation and repeated the above-challenged language, it followed with this instruction:

If you are convinced beyond a reasonable doubt that the defendant knowingly or purposely caused death or serious bodily injury and death *without* acting in the heat of passion on reasonable provocation, then you must find the defendant guilty of murder. (Emphasis added)

That additional language makes clear that the *absence* of passion/provocation must be proven beyond a reasonable doubt.

In *Erazo,* "a fair reading" of the charge would lead one "to the conclusion that the charge erroneously placed on defendant the burden of proving passion/provocation." 126 *N.J.* at 122, 594 *A.*2d 232. Unlike the instruction in this case, the instruction in *Erazo* failed to state specifically that defendant could not be found guilty of knowing and purposeful murder if the jury had a reasonable doubt regarding whether or not the victim had been killed in the heat of passion upon a reasonable provocation. In contrast to *Erazo,* the instructions in this case left the jury with the overall impression that the State's overriding burden to prove murder beyond a reasonable doubt would encompass the absence of passion/provocation as a constituent aspect of the element of purposeful/knowing murder.

Finally, the case does not involve the failure to allow the jury to consider the evidence of passion/provocation manslaughter. This is not a case in which the charge of manslaughter and the evidence of passion/provocation were disregarded by the trial court and not considered by the jury. See, *e.g., State v. Crisantos,* 102 *N.J.* 265, 269, 508 *A.*2d 167 (1986). Little more than a "scintilla of evidence" is required to warrant submitting to the jury passion/provocation manslaughter as a lesser-included offense. *Id.* at 278, 508 *A.*2d

167. Submission of the passion/provocation charge will not be foreclosed even where ample evidence demonstrates that "defendant's homicidal act was coolly calculated." *State v. Mauricio,* 117 *N.J.* 402, 417, 568 *A.*2d 879 (1990). In this case, however, unlike in *Crisantos* and *Mauricio,* the trial court did not foreclose the jury's consideration of passion/provocation manslaughter. Nor were its instructions so erroneous as to confuse or mislead the jury in its consideration of passion/provocation manslaughter. The instructions gave the members of the jury an opportunity to consider fully whether passion/provocation was present. The trial court explicitly told them to consider passion/provocation in the context of knowing and purposeful murder. It also told them that they could not find the defendant guilty of knowing and purposeful murder if they had a "reasonable doubt as to whether [or not] the defendant" had killed his victim "in the heat of passion upon a reasonable provocation."

Moreover, we are not faced with overwhelming evidence of passion/provocation as the singular and distinctive factor that led to the killing. Fairly viewed, the evidence suggests that the relentless manner in which defendant pursued his wife and the manner in which he viciously executed her after she clearly had given up the combat and had become totally defenseless undermine support for characterizing the murder as an act of passion/provocation manslaughter. Although that view of the homicide is not dictated by the evidence and clearly would not obviate the submission of passion/provocation manslaughter to the jury, it does militate strongly against the actuality of prejudice that may have emanated from the somewhat maladroit instructions on that charge. Justice Stein's dissent criticizes that conclusion as "unsettling" reasoning that the "question whether the homicide was mitigated by passion/provocation is for the jury to resolve." *Post* at 331, 639 *A.*2d at 1106. However, the jury, with ample opportunity, did consider passion/provocation and rejected it. It did so on evidence that more than adequately supported its verdict.

In sum, a review of the factual record does not suggest the likelihood that the court's explanation of the law of murder and manslaughter, the manner in which the jury's deliberations should progress, and the State's burden of proof resulted in or contributed to an improper verdict.

We affirm the judgment of the Appellate Division.

STEIN, J., dissenting.

Despite an obviously flawed jury instruction on the State's burden of proof, the Court affirms defendant's murder conviction, concluding that the error did not cause prejudice sufficient to warrant reversal. We often have emphasized that " '[a]ppropriate and proper charges to a jury are essential for a fair trial.' " *State v. Collier*, 90 *N.J.* 117, 122, 447 *A.*2d 168 (1982) (alteration in original) (quoting *State v. Green*, 86 *N.J.* 281, 287, 430 *A.*2d 914 (1981)). "[E]rroneous instructions on material issues are presumed to be reversible error, excusable only if they are harmless beyond a reasonable doubt." *State v. Crisantos*, 102 *N.J.* 265, 273, 508 *A.*2d 167 (1986) (citing *Collier, supra,* 90 *N.J.* at 122–23, 447 *A.*2d 168). Such errors "are poor candidates for rehabilitation under the harmless error philosophy." *State v. Simon*, 79 *N.J.* 191, 206, 398 *A.*2d 861 (1979).

As the majority opinion acknowledges, *ante* at 325, 639 *A.*2d at 1103, the trial court did not specifically charge the jury that "the State bears the burden of proof with respect to a specific aspect of an element of purposeful and knowing murder, namely, the absence of passion and provocation." The controlling legal principle is firmly established, and was most recently restated in *State v. Wilson*, 128 *N.J.* 233, 607 *A.*2d 1289 (1992):

We, adhere to our conclusion in [*State v. Erazo,* 126 *N.J.* 112, 594 *A.*2d 232 (1991)]. The general instructions given by the trial court do not satisfy the requirement articulated in [*State v. Powell,* 84 *N.J.* 305, 419 *A.*2d 406 (1980)], namely, that "the trial judge must make the State's burden clear by instructing the jury that * * * it must be convinced beyond a reasonable doubt that the accused did not kill * * * in the heat of passion." 84 *N.J.* at 315 [419 *A.*2d 406]. When the record contains evidence of passion/provocation, a charge that does not include a specific instruction that the State must disprove passion/provocation before the

jury can find defendant guilty of murder is fatally flawed—even when the instructions contain general statements concerning the State's burden of proof.

[*Id.* at 240, 607 *A.*2d 1289 (alterations in original).]

In my view, the omission of an instruction that the State bore the burden of proving beyond a reasonable doubt the absence of passion/provocation requires reversal of defendant's conviction.

I

Although the majority observes that "we are not faced with overwhelming evidence of passion/provocation as the singular and distinctive factor that led to the killing," *ante* at 327, 639 *A.*2d at 1104, the jury decision whether the homicide was murder or passion/provocation manslaughter was the central issue at trial, highlighted in the summation of both the prosecutor and defense counsel. The uncontradicted evidence was that defendant and the victim, who had been married approximately four years, had recently separated. The victim, Millicent Heslop, had left the marital home to reside with her sister in Irvington, New Jersey. During a brief reconciliation in April 1991, defendant resided in the Irvington apartment with the victim and her sister, but they told him to leave a few days before the homicide. According to defendant's statement, offered in evidence as part of the State's case, his ejection from the apartment resulted in his sleeping in the New York subway system for two nights.

On the evening of the homicide, a co-worker drove defendant to the Irvington apartment to retrieve his tools and clothing. Unarmed, defendant proceeded to the apartment but found that the lock had been changed. He went back to the van for a crowbar to force open the lock, and then returned to the apartment. Defendant's statement constituted the primary evidence of what occurred inside the apartment.

According to defendant, he saw his wife inside the apartment and asked to be admitted to retrieve his personal belongings. His wife opened the door holding a knife. A struggle ensued and the

two fell to the floor inside the apartment. Defendant picked up the knife, which had been broken, but the victim "grabbed another knife and started stabbing at me. I started blocking it." The victim, still holding the knife, "started to run and scream outside." According to defendant's statement, "we started to wrestle outside of the house, she tried to stab me with the knife, and I hit her with the crowbar, then she started running away, and she ran to the barber shop."

Defendant's co-worker, Kirby Clark, testified for the State and described what he saw when the victim and defendant came out of the apartment. "[S]he had a big knife in her hand, and Nevel was holding the crowbar. * * * First they were tussling, and the woman, she spinned around, then I seen Nevel, he swung the crowbar and, you know, he didn't hit her, but, you know, he swung the crowbar at her, then like she broke free at that point and then she headed down the side of the house toward the street * * *."

Defendant dropped the crowbar and pursued the victim, who entered a nearby barber shop still carrying the knife and calling for help. After a struggle in which the victim fell to the floor and dropped the knife, defendant picked up the knife and stabbed her. He removed the knife and proceeded back to his co-worker's van, dropping the knife in some bushes on the way.

The police apprehended defendant soon after they arrived on the scene. Officers searched the victim's sister's apartment, finding blood stains on the door, floor, and bedroom wall, and a broken knife. Police officers took defendant to a local hospital, where he received stitches for a cut on his finger. They then took him to police headquarters, where he voluntarily gave the statement to police that the court admitted into evidence at trial.

The majority opinion, although acknowledging the necessity for a charge on passion/provocation manslaughter, implies that support for that characterization of the homicide is undermined because the stabbing occurred after the victim "had given up the combat and had become totally defenseless * * *." *Ante* at 327, 639 *A.*2d at 1104. That view of the evidence, the majority

suggests, "militate[s] strongly against the actuality of prejudice" caused by the faulty jury charge. *Ibid.* The Court's rationale, however, is unsettling. Assuming, as the Court concedes, that a jury charge on passion/provocation manslaughter was required by the evidence, the question whether the homicide was mitigated by passion/provocation is for the jury to resolve. *Crisantos, supra,* 102 *N.J.* at 275, 508 *A.*2d 167. Moreover, the Court's focus on the homicidal act minimizes the significance of the uncontested evidence that the victim attempted to stab defendant when he entered the apartment, and that after the first knife broke, she obtained a second knife and continued to wield it threateningly against defendant when the conflict continued outside the apartment.

The law is well settled that merely a threat with a gun or knife can constitute adequate provocation. *State v. Mauricio,* 117 *N.J.* 402, 414, 568 *A.*2d 879 (1990); *State v. Powell,* 84 *N.J.* 305, 320, 419 *A.*2d 406 (1980); *State v. Bonano,* 59 *N.J.* 515, 523–24, 284 *A.*2d 345 (1971). Battery, or mutual combat, has generally been considered adequate provocation, "almost as a matter of law * * *." *Mauricio, supra,* 117 *N.J.* at 414, 568 *A.*2d 879; *Model Penal Code* § 210.3 cmt. at 57 (1980); 2 Charles E. Torcia, *Wharton's Criminal Law* §§ 158–159 (14th ed. 1979). Once adequate provocation is established, a trial court next considers "whether the perpetrator had reasonable time to cool off before killing the victim," *Mauricio, supra,* 117 *N.J.* at 412, 568 *A.*2d 879, an objective appraisal based on a court's "sense of the situation." *Id.* at 413, 568 *A.*2d 879. On this record, the interval that elapsed between the attempted knifing of defendant in the apartment, the encounter outside with the victim wielding a knife and defendant swinging a crowbar, and the fatal stabbing in the barber shop surely was too brief to permit a court to conclude that defendant necessarily had "cooled off" before the homicide. The remaining elements of passion/provocation manslaughter, whether the provocation actually impassioned the perpetrator and whether the perpetrator actually cooled off, are subjective elements ordinarily left for jury determination. *Ibid.* Accordingly, notwithstanding

the majority's assessment of the strength of the evidence, the record unmistakably established a rational basis for a jury verdict of passion/provocation manslaughter.

## II

The trial court charged the jury on murder and on the lesser-included offenses of aggravated manslaughter, reckless manslaughter, and passion/provocation manslaughter. The court's instructions on those offenses were flawed in three respects, and only one of the errors was corrected before jury deliberations commenced. The corrected error concerned the trial court's initial instruction that the jury need not consider lesser-included offenses if it determined that defendant was guilty of murder. The other errors—failure to instruct the jury that the State bore the burden of proving as an element of murder the absence of passion and provocation, and an inadvertent but clearly erroneous misstatement of the jury's function with respect to the offense of passion/provocation manslaughter—were never corrected.

The relevant portion of the trial court's charge to the jury on murder stated:

> Murder is the unlawful killing of one person by another purposely or knowingly.
>
> A person who commits a killing does so purposely when it is the person's conscious object to cause death or serious bodily injury resulting in death.
>
> A person who commits a killing does so knowingly when the person is aware that what he is doing will cause death or serious bodily injury resulting in death or is practically certain to cause death or serious bodily injury resulting in death.
>
> In either case, that is, whether the killing is committed purposely or knowingly[,] causing the death or serious bodily injury must be within the design or contemplation of the defendant.

Shortly thereafter, at the beginning of its charge to the jury on the lesser-included offenses of murder, the court instructed the jury:

> If you were to decide the defendant is guilty of a purposeful knowing murder, then you don't have to consider the lesser included offenses.

The trial court then proceeded to instruct the jury on the lesser-included offenses, concluding its passion/provocation-manslaughter charge as follows:

> If you are not satisfied beyond a reasonable doubt that the defendant, that the elements of this offense have been proved, or any one of them has failed to be proved, then you should find the defendant not guilty of this charge.
>
> On the other hand, if you are satisfied beyond a reasonable doubt that the defendant knowingly or purposely caused death or serious bodily injury resulting in death, without—I am sorry—if you are satisfied beyond a reasonable doubt that the defendant knowingly or purposely caused the victim's death, *but you have a reasonable doubt as to whether the defendant did so in the heat of passion upon a reasonable provocation,* then you should find the defendant guilty of manslaughter. (Emphasis added).

As noted, the trial court's initial charge on murder and on passion/provocation manslaughter does not explain the relationship of the offenses or inform the jury that to convict defendant of murder, the State must prove beyond a reasonable doubt the absence of passion and provocation. In addition, referring to the last two paragraphs of the charge on passion/provocation manslaughter, the second paragraph incorrectly states the jury's function and contradicts the statement in the first paragraph. The problem arises from the trial court's undoubtedly inadvertent use of the words "did so," rather than "did not do so," in the phrase "but you have a reasonable doubt as to whether the defendant *did so* in the heat of passion upon a reasonable provocation, then you should find the defendant guilty of manslaughter." As stated, the charge instructs the jury, contrary to the preceding paragraph, that it should convict the defendant of passion/provocation manslaughter if it had a reasonable doubt that the murder had been committed in the heat of passion on a reasonable provocation. Obviously, that explanation of the jury's duty in respect of passion/provocation manslaughter seriously misstates the law. Correctly stated, the concluding phrase of the second paragraph should have read "but you have a reasonable doubt that the defendant *did not do so* in the heat of passion on a reasonable provocation, then you should find the defendant guilty of manslaughter." Unfortunately, the trial court repeated the error in

the course of two other attempts to charge the jury on passion/provocation manslaughter.

Prior to the commencement of deliberations, defense counsel requested the trial court to modify that portion of the charge that informed the jury that it need not consider the lesser-included offense of passion/provocation manslaughter if it decided that defendant was guilty of murder, undoubtedly adverting to this Court's holding in *State v. Coyle*, 119 *N.J.* 194, 222–23, 574 *A.*2d 951 (1990), that a similar instruction constituted reversible error. In response to defense counsel's concerns, the trial court modified its earlier instruction:

> The * * * point that counsel wants me to make clear to you is that when you consider the charge of purposeful or knowing murder that you have to in that context, of course, aside from considering the self defense that's been interposed here as well, that you also have to consider the heat of passion.
>
> In other words, if you are not satisfied beyond a reasonable doubt that the defendant acted purposely or knowingly, then you would find him not guilty of a purposeful or knowing murder.
>
> If you are satisfied beyond a reasonable doubt that the defendant knowingly caused death or serious bodily injury resulting in death without acting in a heat of passion upon reasonable provocation, then you should find him guilty of murder.
>
> If you are satisfied beyond a reasonable doubt that the defendant knowingly or purposely caused the death of the victim *but you have a reasonable doubt as to whether the defendant did so in the heat of passion upon a reasonable provocation,* then you should find the defendant guilty of manslaughter.
>
> In other words, that you should consider the heat of passion upon reasonable provocation in connection with the purposeful or knowing murder count. (Emphasis added).

Although the trial court corrected its charge to instruct the jury that it must consider passion/provocation manslaughter in connection with its deliberations on purposeful or knowing murder, the court did not instruct the jury that the State bore the burden of proving beyond a reasonable doubt the absence of passion/provocation. In addition, in the fourth paragraph of the modified instruction, the trial court again erroneously used the phrase "did so" rather than "did not do so," resulting in a flawed charge to the jury.

The jury began deliberations on October 10, 1991. The following day it requested additional instructions on murder and aggravated manslaughter. At defense counsel's request, the following sidebar discussion ensued in the course of which defense counsel asked the court to recharge the jury on passion/provocation manslaughter, emphasizing the State's burden of disproving passion/provocation in the context of murder:

[DEFENSE COUNSEL]: I would ask you to give them heat of passion along with that, because if they [do] find knowing, purposeful [murder], they have to be convinced beyond a reasonable doubt that despite that it is not in the heat of passion.

[ASSISTANT PROSECUTOR]: Judge, they specifically asked for purposeful, knowing [murder] and aggravated manslaughter.

THE COURT: Yes, but I think what she is saying is that there is a recent case that talks about that when that's raised, that you have to give it in the context of the murder.

[DEFENSE COUNSEL]: *And when it's raised, the State has the burden of disproving it.*

THE COURT: I am going to do it. I am not going to fool around with it. (Emphasis added).

Accordingly, the trial court recharged the jury on murder and passion/provocation manslaughter, concluding with the following statements:

If you are not satisfied beyond a reasonable doubt the defendant in fact caused the victim's death or that the defendant acted purposely or knowingly, you should find the defendant not guilty of murder.

If you are satisfied beyond a reasonable doubt that the defendant knowingly or purposely caused the victim's death, *if you have a reasonable doubt as to whether the defendant did so in the heat of passion upon reasonable provocation, then you should find the defendant guilty of manslaughter.*

If you are convinced beyond a reasonable doubt that the defendant knowingly or purposely caused death or serious bodily injury and death without acting in the heat of passion on reasonable provocation, then you must find the defendant guilty of murder. (Emphasis added).

Once again, the trial court failed to instruct the jury that the State, not the defendant, bore the burden of proof beyond a reasonable doubt that the homicide did not occur in the heat of

passion on reasonable provocation. Moreover, the trial court again used the phrase "did so" rather than "did not do so" in the middle paragraph of the supplemental instruction quoted above, resulting in an erroneous jury charge on passion/provocation manslaughter.

Our cases make crystal clear that the trial court's instruction was defective. We emphasized in *State v. Grunow*, 102 *N.J.* 133, 506 *A.*2d 708 (1986), a trial court's obligation in a case that warrants a passion/provocation charge: " '[A] trial judge *must make the State's burden clear* by instructing the jury that to find [murder] it must be convinced beyond a reasonable doubt that the accused did not kill * * * in the heat of passion caused by inadequate provocation * * *.' " *Id.* at 145, 506 *A.*2d 708 (emphasis added) (alterations in original) (quoting *Powell, supra*, 84 *N.J.* at 315, 419 *A.*2d 406 (footnote omitted)).

In *Coyle, supra*, we re-emphasized the importance of a proper instruction on the State's burden of proof: "When the record contains evidence of passion/provocation, the State can obtain a murder conviction only if it proves beyond a reasonable doubt that the purposeful killing was not the product of passion/provocation." 119 *N.J.* at 221, 574 *A.*2d 951.

More recently, in *Erazo, supra*, 126 *N.J.* 112, 594 *A.*2d 232, Justice Pollock restated the same principle and also rejected the State's contention that the trial court's general instruction on burden of proof was sufficient:

> When a defendant places passion/provocation in issue, the State, to prove a knowing or purposeful murder, must prove beyond a reasonable doubt that defendant's actions were not the result of passion.
>
>      *     *     *     *
>
> * * * To support its contention that the charge was merely ambiguous, the State points to an earlier instruction:
>
> > [T]he burden of proof is on the State. * * * [T]hat burden never shifts and it remains on the State throughout the whole case, so no burden with respect to proof is imposed upon the defendant, Mr. Erazo. He is not obligated to prove his innocence.

That general statement, although accurate, lacks the muscle to shift to the State the burden to disprove passion/provocation.
[*Id.* at 121–22, 594 *A.*2d 232 (citations omitted) (alterations in original).]

As noted *supra* at 328, 639 *A.*2d at 1105, the same rule was repeated with unmistakable clarity in *Wilson, supra,* 128 *N.J.* at 240, 607 *A.*2d 1289: "When the record contains evidence of passion/provocation, a charge that does not include a specific instruction that the State must disprove passion/provocation before the jury can find defendant guilty of murder is fatally flawed—even when the instructions contain general statements concerning the State's burden of proof."

In the face of this compelling precedent, the majority finds comfort in its observation that "although the [trial court's] instruction did not explicitly state that the burden of proving the lack of passion/provocation rests with the State, nowhere did it suggest that the burden of proof on that issue belongs to the defendant." *Ante* at 325, 639 *A.*2d at 1103. The Court also finds reassurance in its review of the factual record, which, it concludes, "does not suggest the likelihood" that the trial court's flawed instruction either "resulted in or contributed to an improper verdict." *Ante* at 328, 639 *A.*2d at 1105. As our case law makes abundantly clear, however, an instruction that fails to state clearly that the State bears the burden of disproving passion/provocation is not cured merely by the absence of language suggesting that that burden is borne by the defendant. Nor have we heretofore been willing to sustain a murder conviction in the absence of an adequate instruction on the State's burden of proof merely because the record did not "suggest the likelihood" that the error contributed to an improper verdict. The choice between murder and passion/provocation manslaughter, which depends on the mental state of the accused, is not the province of this Court. "Deciding that question is the jury's function." *Crisantos, supra,* 102 *N.J.* at 284, 508 *A.*2d 167 (O'Hern, J., concurring in part, dissenting in part). On an issue so critical to the jury's deliberative function, we should not compromise our insistence on "a specific instruction that the State must disprove passion/provocation [beyond a reasonable doubt]

before the jury can find defendant guilty of murder * * *." *Wilson, supra,* 128 *N.J.* at 240, 607 *A.*2d 1289.

I would reverse the judgment of the Appellate Division and remand the matter for retrial.

CLIFFORD and POLLOCK, JJ., join in this opinion.

CLIFFORD, J., dissenting.

I join in Justice Stein's dissent. Because part of the debate on the accuracy of the trial court's charge seems to have ripened into a disagreement on, of all things, correct grammar, I write separately only to take up the cudgels in defense of linguistic hygiene. See *Pico v. State,* 116 *N.J.* 55, 64, 560 *A.*2d 1193 (1989) (concurring opinion). I hasten to add that I approach the task with but the slenderest of credentials, particularly in the face of the sophisticated analyses spun out in my colleagues' opinions. My own primitive frame of reference is limited pretty much to what I learned around 1935–36 from Miss Doane in the sixth grade at Franklin School No. 3, Passaic, New Jersey. Miss Doane was not one to brook sloppy grammar.

The "grammar" issue originates in the following passage from the trial court's jury charge on passion/provocation manslaughter:

[I]f you are satisfied beyond a reasonable doubt that the defendant knowingly or purposely caused the victim's death, *but you have a reasonable doubt as to whether the defendant did so in the heat of passion upon a reasonable provocation,* then you should find the defendant guilty of manslaughter. (Emphasis added).

Justice Stein's dissent argues that among the shortcomings in the foregoing passage is the absence of "not" in the specification of what the State must prove beyond a reasonable doubt before the jury can find a defendant guilty of murder, namely, that the defendant did *not* knowingly or purposely cause the victim's death in the heat of passion on a reasonable provocation. Put differently, the offending passage misstates the subject on which the "reasonable doubt" focuses: whether the defendant *did* kill in the heat of passion, as contrasted with whether he did *not* kill in the heat of passion. The propositions are not at all the same, and the

Court does violence to both the law and the English language in suggesting, *ante* at 325–326, 639 *A*.2d at 1103–1104, that they are.

When the evidence would permit a jury to find a defendant guilty of passion/provocation manslaughter as well as of knowing or purposeful murder, the State can gain a murder conviction only by persuading the jury beyond a reasonable doubt that the defendant did *not* kill in the heat of passion on reasonable provocation. The State's burden is to prove a negative. If the jury has a reasonable doubt that the State has proven that negative—that is, that the defendant did *not* kill in the heat of passion—then the jury should return a passion/provocation man-slaughter verdict. In effect, the State "backs into" a passion/prov-ocation manslaughter conviction by its failure to carry its burden to prove murder.

A trial court simply cannot convey to a jury the State's burden as stated above through an instruction that defines the subject on which it may entertain a reasonable doubt in terms of, as in this case, whether the defendant *did* knowingly or purposely kill in the heat of passion. Nor, in the Court's transposition of the charge, in terms of "whether *or not*" defendant did kill in the heat of passion. Assuming, as the Court does, *ante* at 325–326, 639 *A*.2d at 1103–1104, that " 'whether' would *encompass* the statement that the dissent would prefer" (emphasis added), it also unfortunately—and fatally—"encompasses" the entirely inaccurate instruction that plainly misstates the nature of the State's burden. And in putting that burden up for grabs, the charge runs the risk of creating the impression that the defendant must carry the burden of proving that he *did* kill in the heat of passion. We should not dispose of those concerns with the breezy—and to me (to Miss Doane, too, I will wager) almost incomprehensible—declaration, *ante* at 326, 639 *A*.2d at 1104, that "the instructions * * * left the jury with the overall impression that the State's overriding burden to prove murder beyond a reasonable doubt would encompass the absence of passion/provocation as a constituent aspect of the element of purposeful/knowing murder."

Part of the problem in the charge in this case inheres in the trial court's resort to the expression "as to whether." "As to," as Miss Doane taught me years ago, and as confirmed by my later exploration of Fowler, "is usually either a slovenly substitute for some simple preposition," including "of," "about," "on," or "concerning," or it is "entirely otiose." F.W. Fowler, *Fowler's Modern English Usage* 36–37 (Sir Ernest Gowers 2d ed. 1985). Fowler continues:

> As might be expected, those who put their trust in a phrase that is usually either vague or otiose are constantly betrayed by it into positive bad grammar * * *. The popular favourites: *The question as to whether, The doubt as to whether,* may almost be included among the ungrammatical developments, since *the* doubt or question demands an indirect question in simple apposition (*The question whether, The doubt whether* ); in such forms as *Doubts are expressed as to whether,* the "as to" is not incorrect, but merely repulsive.
>
> [*Id.* at 37.]

The uncertainties posed by the clumsy "as to whether" language are obviated by the use of Justice Stein's simpler, more direct formulation of the charge, *ante* at 334–335, 639 A.2d at 1108, which is faithful to the law and respectful of the English language, namely:

> Correctly stated, the concluding phrase of the second paragraph should have read "but you have a reasonable doubt *that* the defendant *did not do so* in the heat of passion on a reasonable provocation, then you should find the defendant guilty of manslaughter." (First emphasis added).

The foregoing is consistent as well with the Model Jury Charge that was in effect when this case was tried. That model charge reads in pertinent part:

> [To gain a murder conviction] the State must prove beyond a reasonable doubt * * * that the defendant did not act in the heat of passion resulting from a reasonable provocation.
>
>     *       *       *       *       *       *       *       *
>
> If you determine that the State has disproved beyond a reasonable doubt that there was adequate provocation *or* that the provocation actually impassioned the defendant *or* that the defendant did not have a reasonable time to cool off *or* that the defendant did not actually cool off, *and,* in addition to *dis*proving one of those four factors, you determine that the State has proven beyond a reasonable doubt that the defendant purposely or knowingly caused death or serious bodily injury resulting in death, you must find the defendant guilty of murder.

If, on the other hand, you determine that the State has not disproven at least one of the factors of passion/provocation manslaughter beyond a reasonable doubt, but that the State *has* proven beyond a reasonable doubt that the defendant purposely or knowingly caused death or serious bodily injury resulting in death, then you must find him/her guilty of passion/provocation manslaughter.

[*Model Jury Charges (Criminal)*, Murder, Passion/Provocation and Aggravated/Reckless Manslaughter (June 24, 1991).]

Had the trial court simply resorted to the model charge, it would have avoided error.

Finally, when the difference between precision in speech and what is at best ambiguous terminology becomes the difference between, on the one hand, a term of between five and ten years with a maximum parole disqualifier of five years and, on the other hand, thirty years without parole eligibility, we should not tolerate slovenly expression.

Miss Doane would flunk the majority.

*For affirmance*—Chief Justice WILENTZ, and Justices HANDLER, O'HERN and GARIBALDI—4.

*For reversal*—Justices CLIFFORD, POLLOCK and STEIN—3.