STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. TED LAND AND JOAN LAND, DEFENDANTS-APPELLANTS.

Argued November 22, 1976—Decided March 25, 1977.

*Mr. Michael A. Querques* argued the cause for appellant Ted Land.

*Mr. Donald S. Goldman* argued the cause for appellant Joan Land (*Messrs. Goldman, Goldman and Caprio,* attorneys).

*Mr. Michael A. Graham,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

SCHREIBER, J. The central issue is the propriety of one attorney representing two defendants charged with the same crimes. Ted and Joan Land, husband and wife, were each indicted for possession of more than 25 grams of marihuana, possession of cocaine, and possession with intent to distribute those substances. Mr. Land was found guilty of all counts. Mrs. Land was found guilty of the possession charges, but not of the possession with intent to distribute. The Appellate Division affirmed. 136 *N. J. Super.* 354 (1975). We granted certification, 69 *N. J.* 390 (1976).

About 6:00 A.M. on July 26, 1972, five detectives, armed with a search warrant, went to the defendants' one family house at 832 E. Blancke Street, Linden, New Jersey. Mr. Land had already left for work, but Mrs. Land was home and permitted the detectives to enter and search the house. In the master bedroom, the detectives discovered a metal box and a gram scale in a closet, and some tinfoil packets of cocaine and a bag of marihuana in a dresser. They also found a pipe useable for marihuana, a strainer and two measuring spoons. When Mrs. Land said she had no key to the box, the officers broke it open and found over 500 grams of cocaine and 175 grams of dextrose.

One attorney represented both defendants throughout the trial. Aside from disputing the identity and definitional quality of the controlled dangerous substances, the defense attempted to establish Joan Land's innocence and inferentially her husband's guilt. She was the only defense witness and she sought to exculpate herself by claiming that she was unaware of the metal box in the closet. She maintained that the closet was exclusively used by her husband. A detective testified that Joan Land had stated that she did not possess the key to the metal box before it was broken open. She said that she knew nothing of the existence of the marihuana and tinfoil cocaine packets found in the dresser drawers which she asserted were used by her husband alone. She denied knowledge of any of the other

narcotic related items and claimed the spoons and strainer were a part of her kitchen utensils. Since she stated that only her four infant children and husband resided in their house, her testimony obviously inculpated her husband.

Nothing in the record indicates that the defendants were advised by their attorney or the trial court of the potential conflict in engaging one attorney to defend them. It was not until the appeal had been filed that separate attorneys were retained. The Appellate Division did not reject the claim that the parties were entitled to and should have been represented by separate counsel, but held that no harm resulted because "[t]here is nothing in the record which would suggest that separate counsel would have achieved another result." 136 *N. J. Super.* at 358.

The Sixth Amendment to the Federal Constitution, which is applicable to the States by virtue of the Fourteenth Amendment, *Gideon v. Wainwright,* 372 *U. S.* 335, 83 *S. Ct.* 792, 9 *L. Ed.* 2d 799 (1963), requires that in a criminal prosecution the "accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." The New Jersey Constitution contains almost identical language. Art. I, par. 10.[1]

█ Mere literal compliance, that is representation by an attorney, may not be enough to satisfy these constitutional mandates. The constitutional right to the "assistance of counsel" contemplates that the attorney's position as an advocate for his client should not be compromised before, during or after trial. In representing more than one defendant, where divergent or conflicting positions may exist, an attorney's representation will probably not be as effec-

---

[1]Art. I, par. 10 provides: "In all criminal prosecutions the accused shall have . . . the assistance of counsel in his defense." The same language appears in Art. I, par. 8 of the 1844 Constitution. The related provision in the 1776 Constitution, Art. XVI, declared "[t]hat all criminals shall be admitted to the same privileges of . . . counsel, as their prosecutors are or shall be entitled to."

tive as it might have been if he had one client.[2] The inherent difficulty in representing more than one defendant in a criminal proceeding and in steering a course which will promote the interests of each, but which will not be to the detriment of any one, exposes the infirmity of dual representation.

Furthermore, the principle of attorney-client confidentiality imposes the inviolability of a sacred trust upon the attorney. It has been said that the right to counsel "would be meaningless if the defendant were not able to communicate freely and fully with the attorney." M. Freedman, *Lawyers' Ethics In An Adversary System* 8 (1975). Representing two defendants involved in the same or related transactions could place the attorney in the impossible position of receiving and respecting confidential communications which may assist one defendant and harm another. Not only does this possibly inhibit the freedom of the client to cooperate completely, it also may curtail the ability of the attorney to be a vigorous partisan for each defendant.

Where the attorney cannot or may not be able to pursue an unrestrained course of action in favor of a defendant because he represents a codefendant, his effective-

---

[2]Sec. 3.5 of the ABA Project on Standards for Criminal Justice, *Standards Relating to the Defense Function* (Approved Draft, 1971) states *inter alia*:

> The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation.

In the commentary to this section the Standards warn that:

> Beyond the obligation of disclosure, there are situations in which the lawyer's independent representation of his client is so inhibited by conflicting interests that even full disclosure and consent of the client may not be an adequate protection. ABA Code DR 6-106. In criminal cases this most frequently occurs where the lawyer undertakes the defense of more than one co-defendant. In many instances a given course of action may be advantageous to one of the defendants but not necessarily to the other.

ness as counsel has been hampered. Under those circumstances, it cannot be said that the defendant's interests are being "protected to the fullest extent consistent with . . . the standards of professional conduct." ABA Project on Standards for Criminal Justice, *Standards Relating to the Defense Function* 145–146 (Approved Draft 1971). As one commentator has written:

A conflict of interests, then, need not necessarily consist of an obvious inconsistency of defenses among multiple defendants. It is quite sufficient to constitute a fatal conflict if counsel is precluded, because of diverging interests of co-defendants, from representing either defendant with that degree of proficiency and forcefulness of defense which he would exhibit if either were his sole client. Where an attorney is impeded from doing his best, he is not only inadequate, but constitutionally 'ineffective.' [Note, *Conflict of Interests in Criminal Proceedings*, 23 *Ark. L. Rev.* 250, 255 (1969) (footnotes omitted)]

The spirit and intent of the federal and state constitutional requirement, effective assistance of counsel, would in that manner be compromised and violated.

Ample precedents support this proposition. In *Glasser v. United States,* 315 *U. S.* 60, 62 *S. Ct.* 457, 86 *L. Ed.* 680 (1941), the Supreme Court reversed a conviction where an attorney, who was already representing one defendant charged with conspiracy to defraud, was designated by the court at the commencement of the trial to represent a co-defendant. The Court wrote that it was:

clear that the "assistance of counsel" guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. [315 *U. S.* at 70, 62 *S. Ct.* at 465, 86 *L. Ed.* at 699]

In *Government of Virgin Islands v. Hernandez,* 476 *F. 2d* 791 (3d Cir. 1973), in a factual pattern strikingly similar to the instant case, a husband and wife who had one attorney were convicted of possession with intent to distribute heroin. After reversing the convictions because of

an improper charge, the court questioned the appropriateness of having one attorney because "counsel may understandably be inhibited in his efforts to demonstrate that one or the other defendant was the guilty party." *Id.* at 794. It was suggested that on retrial the trial judge warn each defendant of the possible dangers of joint representation and afford each the opportunity of selecting separate counsel.

In *State v. Green*, 129 *N. J. Super.* 157 (App. Div. 1974), two defendants charged with unlawful possession of the same controlled dangerous substance were represented by one attorney. The Appellate Division reversed the convictions and commented that "a defendant should have nothing less than the undivided loyalty of his counsel." *Id.* at 161.

■ Underlying the principle that an attorney should represent only one client is the assumption that a conflict exists or may exist between codefendants. Although not apparent, the conflict may surface during the course of the trial. However, there may be circumstances where no conflict exists. Or, even if the possibility of divergence is present, the defendants tactically may desire one counsel. Since a single attorney eliminates reciprocal attacks and a joint defense may have a certain jury appeal, defendants may desire joint representation irrespective of the possible conflict. It is their right to have such representation, for parties may surrender their constitutional right to independent counsel. *Johnson v. Zerbst*, 304 *U. S.* 458, 58 *S. Ct.* 1019, 82 *L. Ed.* 1461 (1937).

■ Initially, it is the attorney's obligation when he first meets with his prospective clients to advise them of possible conflicts and of their constitutional rights. Some guidelines are prescribed in the Disciplinary Rules. *DR* 5–105 reads that:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the

proffered employment, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

(C) In situations covered by DR 5–105(A) and (B) except as prohibited by rule, opinion, directive or statute, a lawyer may represent multiple clients if he believes that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the facts and of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

In a criminal setting, in particular, the attorney should carefully explore the situation and we suggest that, if the circumstances are doubtful, we recommend individual counsel.

In all cases where an attorney represents more than one defendant, the trial court ought to advise the parties of their constitutional rights.[3] This should be accomplished as soon as the trial court is alerted to the existence of multiple representation and feasibly may bring the matter to the attention of the defendants and counsel. The defendants may waive those rights, but the trial judge must make certain on the record that the defendants understandingly and knowingly have decided to forego separate counsel.

In this case the potential conflict between the defendants Ted and Joan Land is self-evident. Were they both in the business of distributing cocaine? If not, which one was? Who possessed the marihuana? Or did they both? Should the husband have prevented his wife from testifying? *Evid. R.* 23(2). Should objections have been made at the trial to questions posed to the detectives to elicit statements Joan Land had made to them — such as whether she had the key to the metal box which contained the cocaine — the

---

[3] A comparable suggestion was made in *State v. Green*, 129 *N. J. Super.* at 164.

negative answer to which inculpated her husband? Furthermore, there is nothing in the record which discloses whether the defendants were at any time advised of their conflicting positions and their respective constitutional rights to independent counsel. An intelligent and competent expression that they did not intend to exercise that right is missing.

Next, it is necessary to determine whether, in the absence of a waiver, the existence of the constitutional infraction necessitates reversal. May the error be harmless? Must there be a showing of specific prejudice or will its possibility suffice? Courts are not in accord on the appropriate test. *See* Annotation, "Circumstances Giving Rise to Conflict of Interest Between or Among Criminal Codefendants Precluding Representation by Same Counsel," 34 *A. L. R.* 3d 470 (1970). In *Glasser v. United States, supra,* the Supreme Court found that any prejudice would justify reversal:

> The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. [315 *U. S.* at 76, 62 *S. Ct.* at 467, 86 *L. Ed.* at 702]

In *State v. Ebinger,* 97 *N. J. Super.* 23 (App. Div. 1967), where an attorney represented a defendant who pleaded guilty and testified against a codefendant who had been represented by the same lawyer, Justice Sullivan, then writing for the Appellate Division, held:

> The right to adequate and effective representation by counsel is so fundamental that invocation of it cannot be made to depend on a showing of prejudice. *Gideon v. Wainright,* 372 *U. S.* 335, 83 *S. Ct.* 792, 9 *L. Ed.* 2d 799 (1963). See *Glasser v. United States,* 315 *U. S.* 60, 62 *S. Ct.* 457, 86 *L. Ed.* 680 (1942) ; *Porter v, United States* [5 Cir., 298 *F.* 2d 461] *supra.* Moreover, where, as here, a substantial conflict of interest is present, the matter of adequate and effective representation falls into a shadowy area which is almost impossible to probe. We hold that in the circumstances here presented defendant did not have adequate and effective representation at trial in the constitutional sense and that, irrespective of the question of actual prejudice, his conviction cannot stand. [*Id.* at 27]

To like effect see *United States ex rel. Hart v. Davenport,* 478 *F.* 2d 203 (3d Cir. 1973) (a showing of a possible conflict of interest or prejudice, however remote, is sufficient); *Kruchten v. Eyman,* 406 *F.* 2d 304, 311 (9th Cir. 1969), judgment partially vacated and remanded on other grounds, 408 *U. S.* 934, 92 *S. Ct.* 2853, 33 *L. Ed.* 2d 748, reh. denied, 409 *U. S.* 897, 93 *S. Ct.* 86, 34 *L. Ed.* 2d 155 (1972) (once a conflict of interest is shown, court will not weigh or determine the degree of prejudice which may result); *Fryar v. United States,* 404 *F.* 2d 1071, 1073 (10th Cir. 1968), *cert.* denied, 395 *U. S.* 964, 89 *S. Ct.* 2109, 23 *L. Ed.* 2d 751 (1969) (court will not attempt to calculate the amount of prejudice); *Sawyer v. Brough,* 358 *F.* 2d 70, 73 (4th Cir. 1966) (possibility of harm is enough).

Other courts will not reverse a conviction in the absence of a specific instance of prejudice due to the joint representation. *United States ex rel. Robinson v. Housewright,* 525 *F.* 2d 988, 994 (7th Cir. 1975); *United States v. Alberti,* 470 *F.* 2d 878, 882 (2d Cir. 1972), *cert.* denied, 411 *U. S.* 919, 965, 93 *S. Ct.* 1557, 2144, 36 *L. Ed.* 2d 311, 685 (1973); *United States v. Lovano,* 420 *F.* 2d 769 (2d Cir.), *cert.* denied, 397 *U. S.* 1071, 90 *S. Ct.* 1515, 25 *L. Ed.* 2d 694 (1970).

In our opinion the preferable rule is that, in the absence of waiver, if a potential conflict of interest exists, prejudice will be presumed resulting in a violation of the New Jersey constitutional provision guaranteeing the assistance of counsel. Art. I, par. 10. We believe that this principle accords with the Supreme Court's exegesis of the Sixth Amendment. *Glasser v. United States, supra.* In this manner the fundamental rights of the defendants to counsel will remain inviolable. As noted above, the attorney, at the outset, must discuss dual representation with the prospective clients. Further, the trial court must, whenever more than one defendant is represented by the same counsel, explore the situation on the record and, mindful of the criteria which we have adopted, advise the defendants of their rights.

■ As we have previously stated, the conflict of interest in one attorney representing Mr. and Mrs. Land is apparent. Actual prejudice to the husband is obvious. Although it is not abundantly clear that Mrs. Land's defense was harmed, we cannot say the possibility did not exist. We do not know whether counsel advised Mr. Land to testify, but under the circumstances it is possible that he should have been called as a witness. If he had corroborated her factual version, perhaps a reasonable doubt of her guilt may have existed in the jurors' minds. Her attorney now contends that there was failure to present evidence to support her defense because it would have inculpated the codefendant and that a motion for a severance should have been made. These claims highlight again the difficulty with which an attorney is faced in representing codefendants. Whenever the attorney has a divided loyalty, the possibility of prejudice to both clients exists.

■ Since a remand for a new trial is in order, it is appropriate to consider some issues which the parties have raised and which may arise in a new trial. The defendant Ted Land claims that his convictions of the charges of possession and possession with intent to distribute cocaine merged. The Appellate Division pointed out that in addition to the cocaine found in the metal box, foil packets of small quantities were also located in the dresser drawer so that an inference could be drawn that these were possessed for personal use as distinguished from the bulk cocaine which the jury apparently concluded was to be distributed. We agree with the Appellate Division that merger may not have been warranted, but this is not clear from the jury's verdicts of guilt. Did it predicate its finding of possession on the bulk cocaine alone or on the packets? At some point during the trial, the State should specify, with particularity, the substances upon which it seeks a conviction for possession and for possession with intent to distribute. *State v. Davis,* 68 *N. J.* 69, 84n.8 (1975). The trial judge should charge the jury on what specific substances their findings of pos-

session and possession with intent to distribute may be predicated.

█ The defendant Joan Land asserts that there was no proof that the amount of marihuana exceeded 25 grams because it contained some stems and sterilized seeds, although the total weight was 27.10 grams. We agree with the Appellate Division that there is no merit in this contention. *N. J. S. A.* 24:21-2 and 24:21-20.

█ Counsel for the defendant Joan Land has stated that he will move for a severance. If such a motion is made, that will be an issue to be resolved by the trial judge. Upon Ted Land's retrial, whether separately or jointly, fundamental fairness dictates that Joan Land's testimony adduced at the first trial should not be utilized substantively against him.

Reversed and remanded.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.