PARIENTE, Judge,
specially concurring.
I concur in affirmance of defendant’s first-degree murder conviction on the record as it stands. I write only to address my concerns with the dual representation by the Public Defender’s Office of defendant and Tiffany Caraway (Caraway), the victim’s mother.
This case arises from the tragic death of a two-year old girl, Shunta Caraway, who died on August 23, 1990, from a physical assault, contributory fever and loss of blood. On August 24, 1990, Caraway, Shunta’s mother, and defendant, John Bynes, Caraway’s boyfriend, were arrested for aggravated child abuse following police interrogation of both individuals.
At their first appearance, a public defender, Steven Malone (Malone), was appointed to represent both defendant and Caraway. On September 25, 1990, Malone withdrew from representation of defendant and continued with representation of Caraway. By September 27,1990, the charges were elevated to first-degree murder, and on that date, independent counsel was appointed to represent defendant.
Thereafter, defendant’s counsel attempted to obtain information from Malone’s file obtained during the joint representation. Malone objected, maintaining that he kept totally separate, distinct files on the two clients and that the only work conducted during the first thirty days involved finding out names of Caraway’s relatives and friends. During the hearing, Malone conceded that during those thirty days, the Public Defender’s Office “did virtually nothing on his [defendant’s] case. They [the Public Defender’s Office] left him standing unrepresented.” Eventually, Caraway entered into a plea bargain with the state in which she pled guilty to a lesser included offense of manslaughter and promised to testify truthfully for the state against defendant.
Defendant claims the joint representation during the first thirty days following arrest denied him effective assistance of counsel. He concedes that following the first thirty days he received independent representation but contends the first thirty days was a critical period of time during which he was effectively without representation. He claims that he was prejudiced by the joint representation, hypothesizing that he was deprived of the ability to plead straight up to aggravated child abuse, even though the state contends this would have had no effect on its ability to file the first-degree murder charges.
Defendant’s appellate counsel candidly admits the difficulty in fashioning a remedy, assuming ineffective assistance of counsel occurred during the first thirty days of representation. Granting a new trial would not provide a remedy in this case, unlike those cases where dual representation occurs during and throughout the trial. See Foster v. State, 387 So.2d 344 (Fla.1980). Counsel’s suggested remedies of allowing defendant to plead to aggravated child abuse or excluding the testimony of Caraway at a new trial do not flow from the alleged error of allowing the joint representation.
An actual conflict of interest adversely affecting a lawyer’s performance violates the Sixth Amendment right to conflict-free counsel. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Foster.
Assuming an actual conflict of interest existed and that the dual representation and the failure to act on behalf of defendant during the period of dual representation resulted in ineffective assistance of counsel during this thirty-day period, in the absence of an objection by trial counsel to the representation, prejudice will be presumed only if defendant demonstrates counsel “actively represented conflicting interests” and “an actual conflict of interest adversely affected his lawyer’s performance.” Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) (citing Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719). An error *1066 by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Id. 466 U.S. at 691, 104 S.Ct. at 2066; see also Bouie v. State, 559 So.2d 1113, 1115 (Fla.1990).
The reported conflict of interest cases concern dual representation that continued during and throughout trial. See Cuyler; Glasser, Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); Foster. This is not to state that a constitutionally infirm conflict arising from joint representation depends on such representation continuing through trial. However, in cases where a full-blown trial has occurred, there will be ample opportunity for a defendant to demonstrate an actual conflict of interest and that the conflict adversely affected the lawyer’s performance.
Despite defendant’s well-written, well-reasoned brief and argument on this point, based on the record before us, defendant has failed to demonstrate how the dual representation in the initial thirty days adversely affected the judgment. Defendant has additionally failed to demonstrate any adverse impact at trial on the procedure employed by the trial court to turn over documents or material gathered by the Public Defender’s Office when Malone was counsel of record for both defendant and Caraway. Further, this procedure was not objected to by defendant’s counsel. Lastly, defendant engages in mere speculation and conjecture, based on the record before us, where he argues that he was deprived of the ability to plead guilty in the first thirty days. By the time the first-degree murder charge was filed, defendant had independent representation. There is no indication in the record that the state was looking to plea bargain with either defendant or Caraway during the first thirty days or that Malone was seeking a plea bargain for Caraway to the prejudice of defendant.[1]
With all of this stated, I would note that in this case involving the death of a two-year old, whether or not a conflict of interest was apparent to the trial court at the time of the initial appointment, a conflict of interest was inevitable. Not only were defendant and Caraway the only people in the house when the child died, but at the time of appointment, both defendant and Caraway had given statements to the police that the other had beaten the child. As stated by the New Jersey Supreme Court in State v. Land, 73 N.J. 24, 372 A.2d 297, 300 (1977):
The inherent difficulty in representing more than one defendant in a criminal proceeding and in steering a course which will promote the interests of each, but which will not be to the detriment of any one, exposes the infirmity of dual representation.
According to the United States Supreme Court in Cuyler, the vast majority of public defender offices have a strong policy against multiple representation and approximately half never undertake such representation. 446 U.S. at 347 n. 11, 100 S.Ct. at 1717 n. 11. Apparently, this Public Defender’s Office does not have such a policy. Without casting blame on either the Public Defender’s Office or the trial court, in my opinion, joint representation at the beginning should never have occurred here.
I would urge the Public Defender’s Office to consider developing a policy against joint representation unless it is clear from the outset that there will be no conflict of interest and the clients knowingly and voluntarily waive their constitutional right to conflict-free counsel. Because joint representation was accepted by the Public Defender’s Office in this case, Malone was placed in the impossible situation of doing nothing for defendant for the first thirty days while more actively representing Caraway. The fact that this case was in the pretrial stages does not lessen the potential for conflict. As noted by the third district in approving a trial court’s order disqualifying counsel, “[e]ven though this matter is in the pretrial stages and an *1067 actual conflict may yet not be apparent, the ease is rife with the potential for such conflict.” Kolker v. State, 649 So.2d 250, 251-52 (Fla. 3d DCA 1994).
I would also urge trial courts to make an inquiry into the potential for conflict of interest from joint representation before appointing the Public Defender’s Office, especially in cases such as this where finger pointing is a likely reality. In Cuyler, the Supreme Court explained that a trial court has a duty to make an inquiry only where “the trial court knows or reasonably should know that a particular conflict exists_” 446 U.S. at 347, 100 S.Ct. at 1717. In this case, in my opinion, a conflict should have been apparent from the outset on the question as to which defendant was the primary cause of the crime — even before the first-degree murder charges were filed. However, that opinion is, in part, guided by the benefit of hindsight.
I, therefore, concur in affirmance of the conviction. By doing so, I do not rule out the possibility that defendant may be able to raise this issue by collateral attack.

. Although an ineffective assistance of counsel claim may be raised on direct appeal where the facts giving rise to such a claim are apparent on the record, it may be that this claim of ineffective assistance of counsel is more properly raised by collateral attack based on a record more specifically directed to these allegations. See Kelley v. State, 486 So.2d 578, 585 (Fla.1986). For example, the state suggests that the prosecutor's motive in wanting to try Caraway first, and in reaching a deal with Caraway instead of defendant, would require the testimony of the prosecutor.