775 A.2d 204

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. EMMANUEL PIERREVIL, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 23, 2001—Decided June 22, 2001.

Before Judges CARCHMAN, LINTNER and PARRILLO.

*Pope, Bergrin & Verdesco*, attorneys for appellant (*Annette Verdesco*, on the brief).

*Donald C. Campolo*, Assistant Attorney General, Acting Essex County Prosecutor, attorney for respondent (*Ian S. Clement*, Special Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

LINTNER, J.A.D.

Defendant appeals from an order of November 13, 2000, granting the State's motion to recuse defendant's counsel. We reverse and remand for further proceedings.

We combine the procedural history and relevant facts. On May 26, 1998, defendant was charged under Essex County Indictment No. 98–07–3048, with second degree conspiracy to commit murder, *N.J.S.A.* 2C:5–2 and *N.J.S.A.* 2C:11–3 (Count One); murder of Greg Blunt, *N.J.S.A.* 2C:11–3a(1) and (2)(Count Two); third degree possession of a weapon, *N.J.S.A.* 2C:39–5b (Count Three); and second degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4a (Count Four).

A second Essex County Indictment, No. 98–07–3046, was returned on the same date charging defendant with second degree possession of a weapon by a convicted felon, *N.J.S.A.* 2C:39–7b. Defendant was initially represented by Raymond Beam, Esq. In June 2000, Paul W. Bergrin, Esq., defendant's current attorney, was substituted as counsel. Bergrin had previously represented Maurice Lowe, who had been charged with the homicide of Greg Blunt, along with co-defendant Mendu Madison under a January 1996 Essex County Indictment, No. 95–12–3938. On April 28, 1997, Madison pled guilty to Count One, which was amended to aggravated manslaughter and Count Two, unlawful possession of a weapon. According to representations made by the State's attorney, the homicide charges against Lowe were dismissed because Madison admitted his own culpability and gave exculpatory statements concerning Lowe's involvement. Bergrin asserted before the motion judge and again asserts in his appellate brief, that the charges against Lowe were dismissed because of lack of evidence. The day following his plea, Madison provided a statement inculpating defendant in the shooting of Greg Blunt. As a result of his cooperation, Madison's sentence was ultimately reduced from eighteen years with an eight-year period of parole ineligibility to fifteen years with a five-year period of parole ineligibility. A trial date was scheduled for November 27, 2000. The State intended to call Madison as a witness against defendant.

On October 27, 2000, defendant filed a motion to compel discov-

ery.[1] Specifically the motion sought evidence previously requested of "any prior promises or agreement of leniency or a specific sentence made" to Madison, as well any plea bargains that were recommended and any other evidence which could affect Madison's credibility as a witness. While defendant's motion to compel discovery was pending, the State filed a cross motion on November 9, 2000, to recuse Bergrin from representing defendant because of his previous representation of Lowe.

Granting the State's motion, the judge stated the following:

> Well, I certainly have a concern with an appearance of impropriety. Certainly, it would not be the first time in a situation like this where the Appellate Courts would have found that there was, in fact, a conflict in limiting the defense attorney's ability to cross-examine a witness, and the matter being reversed and having to be retried for that reason.

> Certainly, and I'm not suggesting that there's an actual conflict, but, certainly, the appearance is there with regard to the general public of Mr. Bergrin being in the position of having to vehemently attack testimony and credibility of Mendu Madison on behalf of his now client, Mr. Pierrevil, where his other client was the beneficiary of that very same agreement.

> I can't see how that is not an appearance of impropriety. And quite frankly, I don't see nor has there been any suggestion of any other remedy than recusal, even though it is quite extreme, but I believe necessary.

> I just don't see any other alternative in this case. Certainly I am of the feeling that to do otherwise is to more than invite a reversal of any verdict in this matter, and I think that the interests of justice do require recusal of Mr. Bergrin in this matter.

According to Bergrin, at the time he represented Lowe, Madison was represented by independent counsel; a joint defense agreement did not exist between Madison and Lowe; he did not receive any confidential information related to Madison from his representation of Lowe; and he never negotiated with the State on behalf of Madison.

An accused's right to the "assistance of counsel" grows out of the Sixth Amendment to the Federal Constitution and Art. I, ¶ 10 of the New Jersey Constitution, both of which have been

---

[1] The discovery motion which is not the subject matter of this appeal was denied by order of November 13, 2000.

interpreted to fundamentally guarantee the right to "effective assistance." *State v. Bellucci,* 81 *N.J.* 531, 538, 410 *A.*2d 666 (1980). "The constitutional right to the 'assistance of counsel' contemplates that the attorney's position as an advocate for his client should not be compromised before, during or after trial." *State v. Land,* 73 *N.J.* 24, 29, 372 *A.*2d 297 (1977). A defendant is entitled to undivided loyalty from his or her attorney whose representation must be "untrammeled and unimpaired." *Bellucci, supra,* 81 *N.J.* at 538, 410 *A.*2d 666. We have observed that there "can be no greater violation of a defendant's right to effective counsel than when his attorney is serving conflicting interests." *State v. Pych,* 213 *N.J.Super.* 446, 452, 517 *A.*2d 871 (App.Div. 1986).

Generally, the "most common scenario in which a conflict of interest may arise is when an attorney represents more than one client in the same matter." *Ibid.* The circumstances before us are somewhat different. *RPC* 1.7(b) provides in pertinent part:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after a full disclosure of the circumstances and consultation with the client. . . .

*RPC* 1.7 is applicable if Bergrin's representation of defendant would be materially limited by his responsibilities to his previous client, Lowe. In *Bellucci, supra,* the Court recognized that "a constitutionally suspect conflict arising from joint representation does not depend on a joint trial." 81 *N.J.* at 539, 410 *A.*2d 666. An attorney's duty as an advocate begins prior to trial and continues not just through trial but after it is over. *Land, supra,* 73 *N.J.* at 29, 372 *A.*2d 297. Thus, an attorney is forbidden from revealing client "confidences or secrets" after representation has been formally terminated. *Bellucci, supra,* 81 *N.J.* at 539, 410 *A.*2d 666; *DR* 4–101.

*RPC* 1.9(a) provides in pertinent part:

(a) A lawyer who has represented a client in a matter shall not thereafter:

(1) represent another client in ... a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client consents after full disclosure of the circumstances and consultation with the former client; or

(2) use information relating to the representation to the disadvantage of the former client....

When considering whether there is an appearance of impropriety, the standard requires "something more than a fanciful possibility." *State v. Sanders,* 260 *N.J.Super.* 491, 498, 616 *A.*2d 1345 (App.Div. 1992).

Recently, our Supreme Court noted that "[t]he relevant inquiry in potential conflict of interest situations is the potential impact the alleged conflict will likely have upon defendant." *State v. Murray,* 162 *N.J.* 240, 250, 744 *A.*2d 131 (2000). In *Bellucci, supra,* the Court was presented with the classic situation where one attorney represented co-defendants in the same matter. 81 *N.J.* at 535, 410 *A.*2d 666. That Court held that prejudice will be presumed once there is a showing of a potential conflict. *Id.* at 543, 410 *A.*2d 666. However, where other circumstances have been present, the court has found it necessary to examine the potential or actual conflict, as the case may be, and evaluate the likelihood of prejudice. *Murray, supra,* 162 *N.J.* at 250, 744 *A.*2d 131 (citing *State v. Bell,* 90 *N.J.* 163, 173, 447 *A.*2d 525 (1982) (holding that the representation of co-defendants by two attorneys from the same Public Defender's office did not raise the presumption of prejudice)).

The harm in representing two clients in substantially related matters results from the restraints placed upon an attorney's advocacy and independence, thus creating divided loyalty. *Bellucci, supra,* 81 *N.J.* at 543, 410 *A.*2d 666. The resulting harm "may prevent counsel from attempting to exonerate one client when doing so would require him to demonstrate that another client is guilty." *Ibid.* An inquiry into the existence or non-existence of actual prejudice may itself "conflict with, or be impeded by, the attorney client privilege," thus forcing counsel "to

choose between candor to the court and duty to his client," in the event the critical issue embraces trial strategy or tactics of counsel. *Id.* at 543–544, 410 *A*.2d 666. Although there exists a strong presumption against waiver, a client's constitutional right to independent counsel may be surrendered. *Glasser v. United States,* 315 *U.S.* 60, 70, 62 *S.Ct.* 457, 86 *L.Ed.* 680 (1942). Howeverer, "[i]n no event is waiver to be found from a silent record." *Bellucci, supra,* 81 *N.J.* at 544, 410 *A*.2d 666. Furthermore, there cannot be an effective waiver by a current client if continued representation will adversely affect a former client. *Ibid.* An attorney is ethically bound under such circumstances to step down and decline representation. *Ibid.*

Applying these principles, we conclude that, where an attorney represents a defendant in a criminal proceeding growing out of substantially the same events for which the attorney represented a former client, the court is obligated to protect both the current and former client by exploring the attendant circumstances of such representation, on the record, to ensure that both clients understand the potential hazards and limitations involved with multiple representations. If the conflict is such that either client will be prejudiced, the attorney may not continue in his representative capacity. If the record fails to show actual prejudice to either client, as the result of the dual representation, prejudice will be presumed and each client must ascent to the attorney's continued representation after being fully apprised of the potential pitfalls and limitations that might arise from continued representation.

The record before us is barren of inquiry into the nature of any potential or actual conflict that might exist as the result of counsel's former representation of Lowe. The same homicide victim here was the subject matter of the charges levied against counsel's former client. The dismissal of the previous indictment against Lowe does not necessarily mean that, from defendant's point of view, Lowe was not in any way involved in the crime. Likewise, the dismissal of the earlier indictment does not protect

Lowe should defendant seek to inculpate Lowe in the furtherance of his defense. Certainly, a fatal conflict requiring recusal would exist if, for example, defendant in his defense contemplated naming Lowe as having been involved. Likewise, even in the absence of any present intention by defendant to inculpate Lowe, defendant must nevertheless be apprised that if the potential arises later in his defense, counsel could not be placed in a position of advocating against Lowe on defendant's behalf, nor could counsel disclose to defendant any confidences that may have been shared with counsel by his former client. Similarly, Lowe must be made aware of the potential hazard that may exist to him as the result of counsel's representation of defendant.

We conclude that a remand is necessary to: (1) determine whether there is a potential or actual conflict as the result of Bergrin's representation of Lowe and defendant; (2) if such a potential exists a determination must then be made whether or not there is a likelihood of prejudice respecting Bergrin's ability to provide effective assistance of counsel, which would otherwise disqualify Bergrin from continued representation of defendant; and (3) if there is no showing of actual prejudice or the likelihood of prejudice, then a waiver hearing is necessary to be sure that defendant and Lowe understand and acknowledge the full impact of Bergrin's representation, including the potential limitations to defendant and hazards to Lowe.

Reversed and remanded for further proceedings consistent with this opinion.