**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2916-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SHIQUAN D. BELLAMY,

     Defendant-Appellant.

_____

          Submitted May 19, 2020 – Decided June 5, 2020

          Before Judges Fisher, Accurso and Gilson.

          On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 11-03-0348.

          Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

          Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

          Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals the denial of his post-conviction relief petition. Because defendant was not permitted to explore his trial attorney's acknowledgement of entering into a dating relationship with a witness for the prosecution – a police detective – no later than nine days after the jury found defendant guilty, we vacate the order denying post-conviction relief and remand for an evidentiary hearing.

Defendant, as well as Latonia Bellamy, his cousin, and Darmelia Lawrence, were indicted and charged with the first-degree murders of Nia Haqq and Michael Muchioki, as well as other serious offenses. The relevant facts and circumstances that led to defendant's conviction are recounted in our earlier opinion on defendant's direct appeal, State v. Bellamy, No. A-3369-13 (App. Div. Apr. 18, 2017), certif. denied, 231 N.J. 115 (2017), and need not be repeated here in any great detail.

Briefly, the jury heard evidence that defendant, his cousin, and Lawrence engaged in a carjacking and robbery at about 2:30 a.m., on April 4, 2010. One witness, Amanda Muchioki – the sister of Michael Muchioki – heard a car pull up outside the Jersey City home she shared with her brother and his fiancé, Nia Haqq. Amanda heard a male voice say, "get out of the car," followed by "a loud bang." When she looked out the window she saw two people, whom she could

not identify, standing by the car. She ran to another room to call police and heard "three more shots." Another resident on the same street heard the first shot, ran to a window, and from there watched three individuals – one male and two female African-Americans – get into a black SUV. This witness was able to describe the male as wearing a "fitted hat" and a "camouflage jacket." When she heard more shots, she called police. She watched as the three individuals got out of the SUV and ran away.

The jury also heard from Wahjira Rush, who testified to being in defendant's Jersey City apartment that night. She testified that she observed defendant retrieve a shotgun and handgun from a closet, as well as an "army camouflage jacket." She also testified, among other things, that the three co-defendants left the apartment that night, and defendant arrived "out of breath" at approximately 3:00 a.m.; defendant had in his possession the shotgun, some credit cards, identification cards, and a ring.

Lawrence testified pursuant to a plea agreement she reached with the State. She testified that on the night in question defendant and his cousin spoke about wanting to commit robberies and they eventually departed in the early morning hours. She identified defendant in court, and testified that on the night of the murders defendant wore a camouflaged army fatigue jacket, which

concealed a shotgun in his sleeve; defendant's cousin was in possession of a nine-millimeter handgun in her coat pocket. Lawrence went along, unarmed. When they encountered the victims' black SUV, defendant and his cousin stepped out and demanded the car keys. Lawrence described in detail how the victims were ordered onto the ground, and how defendant shot Michael Muchioki first. This was followed by three more shots; this witness claimed not to have seen which person fired those shots. Following the murders, defendant told his cousin and Lawrence to get in the SUV, but they quickly found it would not start and took off on foot.

The jury also heard from police officers and forensic experts which provided evidence that tied defendant to these crimes. During their investigation, police uncovered a sawed-off shotgun in defendant's apartment. Lawrence identified that weapon as the shotgun used by defendant to kill Muchioki. The nine-millimeter handgun was never recovered. DNA evidence removed from the shotgun's muzzle was positively linked to the projectiles that killed Muchioki.

Of relevance to the issues in this appeal, one of the State's police witnesses was Detective Erin Burns. She provided evidence regarding three nine

millimeter shell casings found at the crime scene. She also testified about finding two fingerprints belonging to Lawrence on the vehicle.

Defendant was convicted of two counts of first-degree murder, four counts of first-degree felony murder, two counts of first-degree carjacking, two counts of first-degree robbery, four counts of second-degree possession of a weapon for an unlawful purpose, third-degree possession of a sawed-off shotgun, second-degree unlawful possession of a handgun, and second-degree conspiracy to commit robbery. Following appropriate mergers, defendant was sentenced in January 2014 to serve consecutive life terms on the two first-degree murder convictions and concurrent terms on other offenses. As noted, we affirmed his convictions and sentence on defendant's direct appeal, and the Supreme Court denied certification.

Defendant filed a PCR petition in November 2017. Through appointed counsel, and by way of his own pro se submission, defendant presented numerous arguments in support of his claim that trial counsel was ineffective. The judge heard argument but did not conduct an evidentiary hearing and ultimately denied relief by way of a written opinion.

Defendant appeals, arguing through appointed counsel that the PCR judge erred in denying defendant an evidentiary hearing regarding:

I. THE DETAILS OF HOW AND WHEN HE BEGAN HIS ROMANTIC RELATIONSHIP WITH DETECTIVE ERIN BURNS AND HOW THAT RELATIONSHIP IMPACTED [HIS] DEFENSE.

II. TRIAL COUNSEL'S FAILURE TO SUBPOENA COURTNEY BROOKS AS A WITNESS IN THE SECOND TRIAL, AND IN FAILING TO CONSULT A HANDWRITING EXPERT, AS BOTH BROOKS AND THE EXPERT WOULD HAVE RAISED REASONABLE DOUBT THAT [DEFENDANT] WROTE THE INCRIMINATING LETTER WHICH WAS INTRODUCED AT TRIAL.

In his supplemental pro se brief, defendant presents two points, which we renumber:

III. THE PCR COURT ERRED IN [ITS] DECISION TO DENY [DEFENDANT] RELIEF WHERE THE COURT FAILED TO DISCUSS ON THE MERITS [DEFENDANT'S] ISSUE WHERE HE . . . PRESENTED [TO] THE COURT . . . A PRIMA FACIE SHOWING OF PROOF THAT HE HAS BEEN DEPRIVED OF DUE PROCESS OF LAW BY THE VIOLATION OF THE REQUIREMENT OF AUTHENTICATION OR IDENTIFICATION (CHAIN OF CUSTODY)[1] RULE IN VIOLATION OF [DEFENDANT'S] RIGHT TO FAIR TRIAL IN VIOLATION OF THE UNITED STATES CONSTITUTION SIXTH AND FOURTEENTH AMENDMENT AND ART. I, PARA. 1, 9[,] 10 AND 21 OF THE NEW JERSEY CONSTITUTION . . . WHERE THE TRIAL COURT OVERRULED OBJECTION TO EVIDENCE ADMISSION.

---

[1] Citing N.J.R.E. 901, R. 3:22-4, and State v. Nash, 212 N.J. 518 (2013).

IV. THE PCR COURT ERRED BY NOT GRANTING [DEFENDANT'S] PETITION OR, IN THE ALTERNAT[IV]E, ORDERING AN EVIDENTIARY HEARING ON [DEFENDANT'S] CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

Defendant included, within Point IV, thirteen subpoints in which he argues attorney ineffectiveness. In the first of these subpoints, defendant contends he was denied the effectiveness of appellate counsel in his direct appeal in the following way:

A. THE APPELLATE COURT FOR PCR ERRED IN DENYING [DEFENDANT'S] INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM RAISED ON SENTENCING COUNSEL . . . IN AN ABUSE OF DISCRETION WHEN THEY NEGATED TO 'MAKE A DECISION ON SENTENCING COUNSEL'S INADEQUATE REPRESENTATION' ON THE CONFLICT OF INTEREST ISSUE BETWEEN TRIAL COUNSEL MICHAEL P. RUBAS AND STATE[']S WITNESS/BALLISTICS EXPERT DET. ERIN BURNS BUT INSTEAD DIRECTED THEIR DECISION ON TRIAL COUNSEL'S PERFORM-ANCE AT TRIAL INSTREAD OF SENTENCING COUNSEL NOT DOING HIS DUE DILIGENCE DURING SENTENCING AS DISCUSSED IN [DEFENDANT'S] ISSUE AS WELL AS THE DIRECT APPEAL COURT'S IN THEIR DECISION TO LEAVE THE ISSUE BY WAY OF PCR . . . .

In the next eleven subpoints, defendant argues the PCR judge erred in denying his ineffectiveness claims and in rejecting his arguments that he was deprived of the guarantees of the Sixth and Fourteenth Amendments of the federal

7

constitution and Article I, paragraphs 1, 9, 10, and 21 of the state constitution,

regarding his trial counsel's failure to:

> B. . . . SEEK OWN HANDWRITING ANALYSIS EXPERT ON [DEFENDANT'S] BEHALF WHERE TRIAL COUNSEL RELIED ON STATE TO PRODUCE THEIR EXPERT. . . .
>
> C. . . . SUBPOENA WITNESS COURTNEY BROOKS TO GIVE TESTIMONY BUT INSTEAD REMOVED HER FROM [DEFENDANT'S] WITNESS LIST WITHOUT ACKNOWLEDGEMENT AND/OR APPROVAL OF [DEFENDANT] AND BY NOT FIRST MAKING A SOUND DECISION TO INVESTIGATE THE WITNESS . . . .
>
> D. . . . OFFER THE EXEMPLARS OF [DEFENDANT'S] KNOWN WRITING SAMPLES TO JURY ON A CRITICAL PIECE OF EVIDENCE THE STATE USED AGAINST [DEFENDANT.]
>
> E. . . . OBJECT TO THE ADMISSION OF HEARSAY AT TRIAL USED TO BOLSTER A TESTIFYING WITNESS OF THE STATE'S TESTIMONY . . . .
>
> F. . . . OBJECT TO THE ADMISSIBILITY OF DAMAGING LETTER THE STATE ALLEGED WAS AUTHORED BY [DEFENDANT.]
>
> G. . . . SEEK OWN DNA EXPERT WHEN DNA APPEARED THAT WAS NEVER DOCUMENTED OR PART OF DISCOVERY AS COUNSEL RELIED ON THE STATE'S EXPERT TO PRODUCE THE EXPERT OF THEIR OWN AND . . . TO FOLLOW-UP ON CHAIN OF CUSTODY OBJECTION AT SIDEBAR . . . .

H. . . . SHOW PROSEC[U]TOR NEGLIGENCE ON INVESTIGATING POTENTIAL THIRD PARTY GUILT SUSPECTS AND . . . TO DISCLOSE HOW THE STATE ELIMINATED THEM AS POTENTIAL SUSPECTS AND NOT CONDUCTING THE SAME INVESTIGATION ON [DEFENDANT.]

I. . . . OBJECT TO HIGHLY PREJUDICIAL REMARKS MADE BY THE STATE DURING CLOSING ARGUMENTS. . . .

J. . . . RETRIEVE FULL COMPLETE COPY OF DISCOVERY WHICH VIOLATED [DEFENDANT'S] RIGHT TO KNOW THE STATE'S CASE AGAINST HIM PURSUANT TO R. 3:13-3. . . .

K. . . . SUBPOENA EYEWITNESS LEMONICA HARRIS BUT INSTEAD REMOVED HER FROM [DEFENDANT'S] WITNESS LIST. . . .

L. . . . USE FIRST TRIAL TRANSCRIPTS OF STATE'S WITNESS DETECTIVE ERIN BURNS TO SHOW INCONSISTENCIES BETWEEN TESTI-MONY GIVEN AT BOTH TRIAL[S.]

And in Point IV's last subpoint, defendant argues the PCR judge erred and abused his discretion by rejecting defendant's cumulative error argument that was based on trial counsel's

M. . . . INADEQUATE ERRORS MADE DURING PRE-TRIAL AS WELL AS DURING TRIAL WHICH VIOLATED [DEFENDANT'S] RIGHT TO A FAIR TRIAL IN VIOLATION OF THE UNITED STATES CONSTITUTION SIXTH AND FOURTEENTH AMENDMENT AND ART. I, PARA. 1, 9, 10 AND 21 OF THE NEW JERSEY CONSTITUTION.

9

We agree with the argument presented in both PCR counsel's brief and defendant's pro se brief, as we more fully discuss in Section I below, that the judge erred by failing to conduct an evidentiary hearing about trial counsel's involvement with Detective Burns. We reject the arguments concerning the inculpatory letter purportedly written by defendant to Brooks for reasons briefly summarized in Section II below. We find insufficient merit in defendants' other arguments to warrant discussion in a written opinion. R. 2:11-3(e)(2).

I

Our reasons for requiring an evidentiary hearing to explore the relationship between trial counsel and Detective Burns may be briefly stated. That such a relationship came into existence is not in question; when it commenced is not entirely clear. Trial counsel acknowledged in a January 2014 letter that he began dating Detective Burns on September 28, 2013, nine days after the guilty verdict. The facts about that relationship need to be explored. While neither side disputes the relationship came into being at some point during counsel's representation of defendant, there is no sworn statement, let alone testimony, that would suggest when the relationship commenced. Defendant is not required to take counsel's word for when the relationship began, particularly when the only "evidence" of the commencement date comes from an unsworn

letter.  See State v. Cummings, 321 N.J. Super. 154, 168-70 (App. Div. 1999). Defendant should be allowed a full opportunity to question his trial counsel, Detective Burns, and any other witnesses with relevant information about their relationship and its impact on counsel's representation of defendant.

The matter is not materially different from the situation in State v. Lasane, 371 N.J. Super. 151 (App. Div. 2004).  The defendant there was a day short of seventeen years old at the time he allegedly committed the charged offenses.  Id. at 154.  Pursuant to the advice of both his attorney and his mother, defendant entered a guilty plea.  Id. at 160.  Later, after being sentenced and losing his direct appeal, the defendant sought post-conviction relief, asserting that his mother's intimate relationship with his attorney deprived him of the type of uncompromised advice required by the Sixth Amendment.  Id. at 155.  At the conclusion of an evidentiary hearing, the judge determined that the relationship between the defendant's mother and counsel consisted of a one-time liaison that occurred after the defendant entered his guilty plea; based on this time line, the PCR judge concluded no conflict of interest existed when counsel and the defendant's mother recommended the entry of a guilty plea.  Id. at 159-60.  We rejected that conclusion and remanded so the defendant might withdraw his guilty plea.  Id. at 166.

Our Lasane holding logically followed from the Supreme Court's broad view of the obligations of counsel. Id. at 164. We relied on State v. Land, 73 N.J. 24, 29 (1977), where the Court emphasized that the accused's right to counsel "contemplates that the attorney's position as an advocate for his client should not be compromised before, during or after trial," and we quoted State v. Belluci, 81 N.J. 531, 538 (1980), where the Court stressed "[t]here is no greater impairment of a defendant's constitutional right to counsel than that which can occur when his attorney is serving conflicting interests." Although we then viewed the circumstances in Lasane as unusual, we found the defendant's entitlement to relief in Land and Belluci, and in other authorities, in concluding that the advice received from both his mother and his attorney was impacted by their relationship and was sufficient to allow the defendant to withdraw his guilty plea. Lasane, 371 N.J. Super. at 166.

In Lasane we had the benefit of fact findings derived from an evidentiary hearing. We conclude that we are entitled to the same here. Certainly, the only information available raises grave questions about whether defendant's trial counsel's relationship with the detective started earlier than claimed.

The mistaken assumption on which the matter has proceeded to date is that the conflict of interest had its genesis in counsel's claim that his first date

with Detective Burns was nine days after the verdict. There is no sworn information as to that alleged fact and, to date, defendant has not had an opportunity to cross-examine his trial counsel or others with relevant information. We also reject the fixation on the first date or the notion that the first date is the critical date in considering when the conflict arose. The relationship or communications leading up to the relationship may have commenced earlier.

These circumstances require exploration and development at an evidentiary hearing. The PCR judge, whose approach was to assume the facts were as asserted in trial counsel's January 2014 letter, as well as the generalities represented by substitute counsel at the sentencing proceeding,[2] deprived defendant of the opportunity to explore whether the facts may have been different.

Based on the little information that is in the record on this subject, the PCR judge concluded that defendant failed to show he was negatively affected by his trial attorney's relationship with Detective Burns. Such a conclusion was

---

[2] All that substitute counsel offered about this conflict of interest was his representation at the sentencing hearing that he previously spoke "directly" to trial counsel who "indicated the conflict of interest did not exist at any time during the trial and he has written a letter to the [c]ourt affirming that and I have no evidence to assert to the contrary."

premature; the circumstances to which we have alluded, and the impact of the actual facts on defendant's right to an effective counsel "[un]compromised before, during or after trial," Land, 73 N.J. at 29, must be fully explored and examined at an evidentiary hearing. The PCR judge mistakenly abused her discretion in declining to conduct such a proceeding.

II

We reject defendant's argument that trial counsel was ineffective in failing to call Brooks to testify, to consult or retain a handwriting expert to support a claim that he did not write the letter, and to more fully object to the letter. The letter, as mentioned earlier and as discussed in our prior opinion, contains defendant's purported statement that he was "facing a lot of time, if these two bitches take the stand." The letter reveals that "these two bitches" were the writer's "kuzin NaNa and Annie"; it was not disputed at trial that these nicknames referred respectively to Latonia Bellamy, who is defendant's cousin, and Darmelia Lawrence, both of whom implicated defendant in these crimes. See Bellamy, slip op. at 12-14. Contrary to defendant's argument, at the first trial Brooks did not testify that defendant did not write the letter, she only testified that she did not know whether defendant wrote it. So, a repeat of that testimony in the second trial would not likely have been helpful to the defense.

Defendant also provided in support of his PCR petition a report from a handwriting expert, who asserted defendant could "neither be identified nor eliminated as the writer." Like Brooks' inconclusive testimony about whether defendant wrote the letter, the expert's opinion also provides little weight to defendant's contention that he was not the writer, since the expert could not exclude that conclusion.

Lastly, even if counsel's decisions not to call Brooks and not to consult with a handwriting expert fell below professional norms, prejudice has not been shown. In our opinion on the direct appeal, we explained at length that the admission of the letter was not capable of producing an unjust result because "of the other overwhelming evidence" of defendant's guilt. Bellamy, slip op. at 18. We agree with the PCR judge that defendant failed to provide a prima facie case of ineffectiveness on the second prong of the Strickland/Fritz test.[3]

---

[3] In Strickland v. Washington, 466 U.S. 668, 687-88, 693-94 (1984), the Court held that an ineffectiveness argument is dependent on proof that counsel's performance fell below professional norms and that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. Reasonable probability in this context means a "probability sufficient to undermine confidence in the outcome" of the proceeding. Id. at 694. See also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland test for ineffectiveness arguments based on the state constitutional right to counsel).

* * *

To briefly summarize, we reject all defendant's arguments that the judge erred in denying post-conviction relief with the exception that we agree the judge erred by failing to conduct an evidentiary hearing about the relationship between defendant's trial counsel and Detective Burns, a witness for the prosecution, as to which we remand for an evidentiary hearing.

The order denying post-conviction relief is vacated and the matter remanded for an evidentiary hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2916-18T4